**Johnny Mack WESTBROOK,
Petitioner-Appellant,**

v.

**Walter D. ZANT, Warden, Georgia
Diagnostic and Classification
Center, Respondent-Appellee.**

No. 83–8880.

United States Court of Appeals,
Eleventh Circuit.

Sept. 21, 1984.

Rehearing and Rehearing En Banc
Denied Oct. 24, 1984.

Joseph M. Nursey, Millard C. Farmer, Atlanta, Ga., for petitioner-appellant.

Susan V. Bolevn, Asst. Atty. Gen., Atlanta, Ga., for respondent-appellee.

Before TJOFLAT, HILL and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

This appeal arises from this Court's remand in *Westbrook v. Zant,* 704 F.2d 1487 (11th Cir.1983) (*"Westbrook I"*). We hold that the district court, 575 F.Supp. 186 (1983), erred in failing to follow the law of this case and the mandate of the *Westbrook I* court on remand by refusing to grant habeas corpus relief on petitioner's claim of ineffective assistance of counsel. Accordingly, we reverse the district court's denial of habeas corpus relief and enforce the mandate of *Westbrook I.*

Petitioner Johnny Mack Westbrook was convicted by a Jones County, Georgia, jury of two counts of murder and two counts of kidnapping with bodily injury.[1] He was sentenced to death for each conviction on the murder counts and to consecutive life

---

1. Citation to an account of the facts from which Westbrook's convictions arose and a detailed procedural history of this case prior to this appeal are found in *Westbrook I.*

sentences on the kidnapping counts. Pursuant to 28 U.S.C.A. § 2254, Westbrook filed the present petition for habeas corpus relief in the United States District Court for the Middle District of Georgia. Without holding an evidentiary hearing, the district court held all of Westbrook's habeas claims to be without merit and dismissed the petition. Finding that a further appeal would be frivolous, the district court, 515 F.Supp. 1347 (1981), denied Westbrook's application for a certificate of probable cause to appeal and leave to proceed in forma pauperis on appeal. This Court granted Westbrook's application and leave to proceed in forma pauperis.

On appeal in *Westbrook I*, Westbrook raised six grounds for relief from his convictions and sentences.[2] Pertinent to this appeal, Westbrook claimed that he was denied the effective assistance of counsel due to his court-appointed trial attorney's conflict of interest:

> Westbrook initially alleges that the attorney appointed to represent him was also counsel to Jones County. According to Westbrook, the representation of Jones County created an impermissible conflict of interest because it was his duty to defend potential lawsuits challenging official actions of the county, such as the constitutionality of the county jury commission's procedures in se-

lecting the grand and traverse jury pools. Westbrook claims that such a situation occurred in *Gibson v. Jackson,* 443 F.Supp. 239 (M.D.Ga.1977), rev'd on other grounds, 578 F.2d 1045 (5th Cir.1978), *cert. denied,* 439 U.S. 1119, 99 S.Ct. 1028, 59 L.Ed.2d 79 (1979). *Gibson* presented as a tangential issue, the composition of the jury pools in Jones County. *Gibson* was in litigation in the Middle District of Georgia during the time of Westbrook's jury trial in Jones County. In *Gibson,* the district court found that the underrepresentation of blacks and females in the Jones County grand and traverse jury lists established a prima facie showing of unconstitutional jury composition. 443 F.Supp. at 245. With his appointed attorney defending Jones County in the *Gibson v. Jackson* litigation, Westbrook contends that it is understandable why the composition of the grand and traverse jury pools were not challenged.

704 F.2d at 1497–98 (footnote omitted).

Applying the governing principle of law that a conflict must be shown to be actual, and not speculative, before representation will be held to fail Sixth Amendment standards, and applying the test for an actual conflict of interest set forth in *Baty v.*

**2.** Westbrook contended:

(1) that the state trial court abused its discretion in refusing to provide funds for a psychologist or psychiatrist to assist in presenting mitigating circumstances in the sentencing phase of trial, and that such refusal violated Westbrook's constitutional rights to due process, equal protection, and fundamental fairness; (2) that he was deprived of the effective assistance of counsel at his state trial because of his attorney's conflicting interest in the representation of Jones County in another case involving challenges to the county's selection procedures for grand and traverse juries prior to, and during the time of Westbrook's indictment and trial; (3) that the state trial court's capital sentencing instructions to the jury were constitutionally inadequate; (4) that the death sentences were based in part upon an unconstitutional application of the aggravating circumstance in the Georgia death penalty statute, Ga.Code Ann. § 17-10-30(b)(7); (5) that the state trial court erro-

neously admitted the confession of his co-indictee into evidence; and (6) that the district court erred in refusing to allow the presentation of evidence either through an evidentiary hearing or by deposition.

704 F.2d at 1490 (footnote omitted).

The *Westbrook I* court found that Westbrook's second, third, fourth and fifth claims had not been exhausted in the state courts, but proceeded to address the merits of these claims because the State had waived the exhaustion requirement. The court affirmed the district court's dismissal of Westbrook's first, fourth and fifth claims. Westbrook's allegation of ineffective assistance of counsel based on a conflict of interest theory was remanded for further proceedings consistent with Section II B of the court's opinion, as discussed in text. Finding the sentencing phase jury instructions constitutionally inadequate, the court ordered Westbrook's death sentences vacated, subject to the State's right to resentence him.

*Balkcom,* 661 F.2d 391, 395 (5th Cir. Unit B 1981)[3], the court determined that:

> If Westbrook's allegations are indeed fact, his appointed attorney's simultaneous representation of Jones County in a lawsuit challenging the composition of the county's jury lists created an actual conflict of the type described in *Baty.* The particular lawsuit, *Gibson v. Jackson,* evolved long before Westbrook was indicted. Clearly, then, counsel would have had notice that such a challenge had been raised. The district court issued its ruling in *Gibson* on December 16, 1977, approximately six weeks after Westbrook's conviction. It seems to us that Westbrook's counsel would have been hard pressed to present a jury composition challenge prior to Westbrook's trial because such a challenge would have been directed against another client. A jury composition challenge, certainly a plausible and prima facie-worthy argument in light of *Gibson,* would have been the appropriate method to discover if Jones County had, by the time of Westbrook's indictment, improved its selection procedures to more accurately reflect county population figures. At the same time, such an argument would have unquestionably undermined Jones County's defense in *Gibson.* This is precisely the type of conflict that renders meaningless the sixth amendment guarantee to effective representation.

*Id.* at 1499.

The court concluded:

> Because the conflict of interest theory was not presented to the state courts and no evidentiary hearing was held in the district court, no record exists to evaluate Westbrook's claims. We therefore remand to the district court with directions to hold an evidentiary hearing. *See, e.g., Roberts v. Wainwright,* 666

F.2d 517, 519 (11th Cir.1982); *Clark v. Blackburn,* 619 F.2d 431, 433–34 (5th Cir.1980). The hearing should determine if Westbrook's appointed attorney represented Jones County's interests in the *Gibson v. Jackson* litigation. If so, the petition must be granted and Westbrook's convictions set aside. If not, this particular allegation warrants no habeas corpus relief.

*Id.* (footnote omitted).

The warden-appellee did not request panel rehearing or rehearing by this Court en banc. Nor did he petition the Supreme Court for writ of certiorari to review the *Westbrook I* court's decision on the ineffective assistance of counsel claim.

On remand, the parties agreed that the deposition of Westbrook's state trial counsel, Denmark Groover, could be used by the district court in lieu of an evidentiary hearing. Based on this deposition, the district court entered findings of fact and conclusions of law denying habeas corpus relief on Westbrook's ineffective assistance of counsel claims.[4] The district court phrased the issue presented by the remand as "[w]hether an *actual* conflict of interest existed such that Groover could not have raised a jury composition claim at petitioner's trial without damaging the interests of Jones County in *Gibson I* or in any other context." 575 F.Supp. at 187–88 (emphasis in original). The district court answered this question in the negative, and held that "[w]hile petitioner's appointed counsel 'represented Jones County's interests in the *Gibson v. Jackson* litigation,' [*Westbrook I,*] 704 F.2d at 1499, it is clear that no actual conflict existed under *Baty,* for Groover certainly 'could have raised the [jury composition] challenge without damaging the interests of another client,' *i.e.,* the Jones County Board of Commissioners. *Id.* at 1499 n. 14." *Id.* at 189.

---

**3.** The Eleventh Circuit has adopted the post-September 30, 1981, case law of the Unit B panel of the former Fifth Circuit, which is binding unless and until overruled or modified by this Court en banc. *See Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982).

**4.** In a ruling not contested on this appeal, the district court held that, apart from the conflict of interest claim, Westbrook's trial counsel's failure to raise the jury composition issue was not ineffective in itself because it was based on a reasonable strategic choice. 575 F.Supp. 189–90.

Again finding that petitioner's claim was frivolous and an appeal would not be taken in good faith, the district court denied Westbrook's application for a certificate of probable cause to appeal and leave to proceed on appeal in forma pauperis. This Court granted Westbrook's application and leave to proceed in forma pauperis, authorizing this appeal.

Petitioner contends that the *Westbrook I* court established the law of this case, binding on the district court and this panel, that the necessary and sufficient predicate for habeas corpus relief on his conflict of interest claim, an actual conflict of interest, was present if the district court determined on remand that his counsel in fact represented Jones County in the *Gibson v. Jackson* litigation. Since it is undisputed that the district court found as a fact that petitioner's counsel so represented Jones County, petitioner claims the writ must issue. Stated differently, petitioner claims that the district court erred in exceeding the scope of the limited factual remand in this case to reexamine the issue of whether an actual conflict of interest was present, and in deciding this issue contrary to the *Westbrook I* court.

■■■ We agree with petitioner that the "law of the case" doctrine provides the analytical framework for our disposition of this appeal. This issue normally arises in the context of a claim, as in the present case, that a trial court ignored or contravened the ruling of an appellate court in an earlier proceeding of the same case. *Robinson v. Parrish*, 720 F.2d 1548, 1550 (11th Cir.1983). This is so because the "law of the case" doctrine "invokes the rule that findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal."

*Dorsey v. Continental Casualty Co.*, 730 F.2d 675, 678 (11th Cir.1984). The doctrine "generally operates to preclude a reexamination of issues decided upon appeal, either by the district court on remand or by the appellate court itself upon a subsequent appeal." *Conway v. Chemical Leaman Tank Lines, Inc.*, 644 F.2d 1059, 1061 (5th Cir.1981).[5] "A federal court enunciating a rule of law to be applied in a particular case establishes the 'law of the case,' which 'other courts owing obedience to it *must,* and which itself will, normally apply to the same issues in subsequent proceedings in that case.'" *William G. Roe & Co. v. Armour & Co.*, 414 F.2d 862, 867 (5th Cir.1969), *quoting* 1 Moore, Federal Practice ¶ 0.404(1) (emphasis in original). In sum, "[o]nce a case has been decided on appeal, the rule adopted is to be applied, right or wrong, absent exceptional circumstances, in the disposition of the lawsuit." *Schwartz v. NMS Industries, Inc.*, 575 F.2d 553, 554 (5th Cir.1978).

■■■ The law of the case doctrine is a restriction "self-imposed by the courts on themselves in the interests of judicial efficiency,"[6] *Conway, supra* at 1061: although federal courts usually refuse to reopen issues that have been previously decided on appeal, it is within their power to do so. *Lehrman v. Gulf Oil Corp.*, 500 F.2d 659, 662 & n. 6 (5th Cir.1974). The former Fifth Circuit has stated that the law of the case doctrine "is not an inexorable command," *White v. Murtha*, 377 F.2d 428, 431 (5th Cir.1967), and, emphasizing that "justice is better than consistency," *William G. Roe & Co., supra* at 867, has recognized three narrowly drawn exceptional circumstances in which the law of the case rule will not be applied. These exceptions occur when (1) the evidence on a

---

**5.** The Eleventh Circuit has adopted the case law of the former Fifth Circuit handed down as of September 30, 1981, which is binding unless and until overruled or modified by this Court en banc. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

**6.** The law of the case doctrine promotes judicial efficiency by serving the purposes of insuring

that litigation on an issue will come to an end, *White v. Murtha,* 377 F.2d 428, 431 (5th Cir. 1967), discouraging "panel shopping" at the circuit court level, *Lehrman v. Gulf Oil Corp.,* 500 F.2d 659, 662 (5th Cir.1974), and assuring the obedience of lower courts to the decisions of appellate courts. *United States v. Williams,* 728 F.2d 1402, 1406 (11th Cir.1984).

subsequent trial was substantially different, (2) controlling authority has since made a contrary decision of the law applicable to the issue, or (3) the previous decision was clearly erroneous and would work a manifest injustice. *White, supra* at 432. Only in these circumstances will a court's refusal to follow the law of the case be excused.

In light of these governing principles of law, we must determine if the *Westbrook I* court established the law of this case as to an actual conflict of interest, and, if so, whether any exceptional circumstances are present in this case justifying departure from that rule.

■ It is evident from the opinion that the *Westbrook I* court established the law of this case that the legal effect of a finding of fact on remand that petitioner's counsel represented Jones County's interests in the *Gibson v. Jackson* litigation was that an actual conflict of interest would be present, and thus that petitioner's claim of ineffective assistance of counsel would be complete. As recognized by the *Westbrook I* court, a successful conflict of interest claim is composed of two elements: "Once a petitioner shows that his trial counsel [1] actively represented [2] [actually] conflicting interests, he has established the constitutional predicate for an ineffective assistance of counsel claim. 704 F.2d at 1499. The first, threshold element of active representation was present in *Westbrook I* through petitioner's allegation that his counsel had in fact represented Jones County's interests in *Gibson v. Jackson.* Accepting his allegation of active representation as true, the court proceeded to the second element of the claim, whether an actual conflict arose from such representation, and held that "his appointed attorney's simultaneous representation of Jones County in a lawsuit challenging the composition of the county's jury lists created an actual conflict of the type described in *Baty.*" *Id.*

Due to the district court's summary dismissal of the petition and the petitioner's failure to exhaust this claim in the state courts, however, no record existed by which the court could evaluate petitioner's lynchpin allegation of active representation. Therefore, since the court had held that the result of a factual confirmation of this allegation was that an actual conflict of interest would be present, and thus both elements of petitioner's claim satisfied, the court further held that an evidentiary hearing to determine active representation was required. *See Roberts v. Wainwright,* 666 F.2d 517, 519 (11th Cir.1982), *cited in Westbrook I,* 704 F.2d at 1499.

Accordingly, the court's mandate was clear and unequivocal:

> The hearing should determine if Westbrook's appointed attorney represented Jones County's interests in the *Gibson v. Jackson* litigation. If so, the petition must be granted and Westbrook's convictions set aside. If not, this particular allegation warrants no habeas corpus relief. 704 F.2d at 1499 (footnote omitted).

■ We can conceive of no other interpretation of the language of the court's explicit holding and mandate than that the court established the law of this case as to the effect of a finding of active representation on the issue of an actual conflict of interest. We so hold. We note again that the appellee did not seek review of the court's determination of this issue.

Further, we find no indication that the court intended that on remand, having found as a fact that petitioner's counsel represented Jones County's interests in *Gibson v. Jackson,* the district court should then redetermine the issue of whether an actual conflict of interest was present. This court's holding in *Westbrook I* that if petitioner's allegations were indeed fact an actual conflict arose and its mandate of a limited factual remand solely on the issue of representation preclude such an intent or result.[7]

---

**7.** The district court relied on two portions of the *Westbrook I* opinion to support its rephrasing of

the issue presented by the remand as whether an actual conflict of interest was present. Nei-

We therefore hold that the district court erred in exceeding the scope of the clear mandate of this Court in *Westbrook I* by reexamining the actual conflict of interest issue and thus allowing the appellee to argue that, in spite of petitioner's counsel's representation of Jones County's interests in the *Gibson v. Jackson* litigation, no actual conflict of interest was present. We further hold that in refusing to grant habeas relief on the ground that, although petitioner's counsel did in fact represent Jones County's interests in *Gibson v. Jackson,* no actual conflict of interest arose, the district court contravened the holding of the *Westbrook I* court and failed to follow the law of this case. *See Baumer v. United States,* 685 F.2d 1318, 1321 (11th Cir.1982); *Schwartz, supra* at 555.

 Our inquiry does not end here. We must further determine if any of the recognized exceptions to the law of the case doctrine are applicable in this case. Because the controlling law on the actual conflict of interest issue has not changed since *Westbrook I,* we decide whether the evidence presented on remand was substantially different from that before the *Westbrook I* court or whether the *Westbrook I* decision was clearly erroneous and would work a manifest injustice.

The district court's holding that no actual conflict of interest was present in this case was grounded on two factual findings which, if correct, might reflect evidence substantially different from that before the *Westbrook I* court. The district court found that the constitutionality of Jones County's jury selection procedures was not an issue in *Gibson I,* 443 F.Supp. 239 (M.D. Ga.1977), the portion of the *Gibson v. Jackson* litigation in which petitioner's counsel participated, and that it was not petitioner's counsel's or his partner's duty to defend the constitutionality of those proce-

ther supports this result or contradicts the clear mandate and holding of the *Westbrook I* court.

The district court edited footnote fourteen of the opinion, appended to the last sentence of the court's mandate, for its phrasing of the issue on remand: "We emphasize that the issue is ... whether his attorney, in view of the alleged conflicting representations, could have raised the challenge without damaging the interests of another client." 575 F.Supp. at 187, *quoting* 704 F.2d 1499 n. 14. Read in its entirety, footnote fourteen states:

14. Ga.Code Ann. § 9-14-42(b) states in part that "[t]he right to object to the composition of the grand or trial jury will be deemed waived ... unless the person challenging the sentence ... satisfies the court that cause exists for his being allowed to pursue the objection after the conviction and sentence has otherwise become final." The conflict of interest, if it in fact existed, would appear to satisfy the statute's requirement of a demonstration of cause for failing to raise the challenge. We emphasize that the issue is not whether Westbrook would have prevailed on a jury challenge in 1977, but whether his attorney, in view of the alleged conflicting representations, could have raised the challenge without damaging the interests of another client. *See Baty,* 661 F.2d at 395.

Read in context, footnote fourteen is an explication of the court's mandate that, if the district court determined on remand that no active representation was present, petitioner's conflict of interest claim "warrants no habeas corpus relief." The court directed the district court to deny relief not because petitioner had waived his right to object to the composition of the grand or trial jury, but because no active representation, and hence no actual conflict, in fact existed. The issue emphasized by the court instead of waiver was whether, if active representation was found, an actual conflict of the type described in *Baty, i.e.,* "whether his attorney could have raised the challenge without damaging the interests of another client," would be present. This question was answered in the affirmative by the *Westbrook I* court. Footnote fourteen falls far short of a command to the district court to reexamine this resolution of the issue in contradiction or addition to the court's explicit holding and mandate.

The district court noted that "the court's opinion also reveals that its position on the conflict of interest issue was contingent upon the accuracy of representations by petitioner." 575 F.Supp. at 187. This is correct. Contrary to the district court, however, the representation upon which the court's holding and mandate was contingent was not petitioner's allegation that his counsel's representation of Jones County in *Gibson v. Jackson* would legally result in an actual conflict of interest. Instead, it is abundantly clear, and spelled out in the court's mandate, that the court's holding of an actual conflict of interest was contingent only upon the accuracy of petitioner's factual allegation that his counsel represented Jones County's interests in *Gibson v. Jackson.*

dures throughout this litigation.[8] Because we conclude that neither of these factual findings is supported by the evidence,[9] and that both are clearly erroneous, we hold that the first pertinent exception to the law of the case doctrine does not apply in this case.

The district court found that *"Gibson I* was a declaratory judgment action involving the issue of whether the Constitution required any of the defendants to pay an attorney representing an indigent petitioner in a state post-conviction proceeding," 575 F.Supp. at 188, and further found that:

> An issue which the indigent plaintiff in *Gibson I* wished to obtain funds to investigate and pursue in his state habeas proceeding was the constitutionality of the Jones County Jury Commissioner's jury selection procedures. However, the constitutionality *vel non* of such procedures or of the composition of the jury list was not at issue in *Gibson I.* This issue did not arise until after *Gibson I,* and culminated in the Eleventh Circuit's recent decision in *Gibson v. Zant,* 705 F.2d 1543 (11th Cir.1983) (*Gibson II*). *Id.*

In its conclusions of law, the district court again states "the constitutionality of the jury pools was not at issue in *Gibson I."* *Id.* at 189.

The *Gibson I* opinion refutes such a construction. As the *Westbrook I* court found, and in so finding established the law of this case as to the fact of the issues involved in *Gibson I,* *"Gibson* [citing *Gibson I*] presented as a tangential issue, the composition of the jury pools in Jones County." 704 F.2d at 1498. This issue arose in *Gib-*

*son I* because the district court followed the analysis of examining the merit of the indigent plaintiff's constitutional claims in order to determine whether he had demonstrated the need for state provided counsel and funds to investigate and present these claims to the state habeas courts. The *Gibson I* court found that the plaintiff had "identified substantial constitutional issues" that required the assistance of counsel and funds to develop in his state habeas proceeding, including his claim "that the grand and petit jury master lists from which his grand and petit juries were selected were unconstitutionally composed." 443 F.Supp. at 244–45. The substance of plaintiff's jury composition claim was found by the court to lie in the fact that his evidence of underrepresentation of blacks and females in the 1975 Jones County grand jury list "makes out a prima facie showing of unconstitutional jury composition." *Id.* at 245. It is therefore clear from the *Gibson I* opinion that, in disposing of the primary issue of whether the Constitution required that the defendants provide funds for counsel and investigation for the indigent plaintiff to pursue his constitutional jury composition challenge in state habeas proceedings, the court was also presented with and addressed the threshold issue of whether this claim merited such expenditure and thus, to this extent, was presented with and addressed the underlying claim.

Likewise, the deposition testimony of petitioner's trial counsel, Denmark Groover, clearly states that the constitutionality of Jones County's jury selection procedures was at issue in *Gibson I.* Groover testified that he appeared on behalf of the Jones

---

**8.** Denmark Groover, Jr., was petitioner's appointed trial counsel. His partner, Frank H. Childs, Jr., served as County Attorney for Jones County, Georgia, and represented Jones County in the *Gibson v. Jackson* litigation. *Gibson I* was pending in the United States District Court for the Middle District of Georgia at the time of petitioner's trial. Although, as the district court notes, it is clear that, even if Groover had not been personally involved in the *Gibson v. Jackson* litigation, his partner's representation of a conflicting interest suffices to state a Sixth Amendment claim, *see, e.g., Zuck v. Alabama,*

588 F.2d 436, 438 (5th Cir.1979), the evidence in this case reflects, and the district court found, that Groover himself actively participated in the representation of Jones County in *Gibson I.*

**9.** The evidence before the district court on remand consisted of the reported decisions in the *Gibson v. Jackson* litigation, also before the *Westbrook I* court, and Groover's deposition. The record in *Gibson I* was not made a part of the record before either the *Westbrook I* court or the district court on remand.

County Board of Commissioners at a hearing held in *Gibson I*, that the purpose of the hearing "was to demonstrate that Mr. Gibson had substantial claims, one of which was the jury issue," meriting the provision of funds, that evidence was presented on this issue, and that "the jury issue, ... was just one of several things," involved in the hearing.

In sum, the evidence reflects that, although the constitutionality of the composition of the jury pools and selection procedures was not the primary issue in *Gibson I*, this issue was raised, developed by an evidentiary hearing, and considered by the court in the context of the *Gibson I* lawsuit. We therefore hold that the district court clearly erred in finding as a fact that this claim was not at issue at all in *Gibson I*.

The district court also found that the defendants in *Gibson I* included both the Jones County Board of Commissioners, represented by the Jones County Attorney, Childs, and his partner, Groover, and the Jones County Board of Jury Commissioners, represented by the Georgia Attorney General. The district court held that under Georgia law Childs' and Groover's client, the Board of County Commissioners, "is in no way responsible for assembling jury lists," 575 F.Supp. at 188, a duty instead delegated to the County Board of Jury Commissioners. The court further found that "Childs' representation of Jones County in *Gibson I* was to the effect that the State, rather than Jones County, should appropriate funds for such appointed counsel," and that "when the issue of the constitutionality of the Jones County jury selection procedures arose in *Gibson II*, the validity of those procedures was defended by the Georgia Attorney General, and not the attorney for Jones County." *Id.* Based on these findings, the court concluded that "neither Groover nor Childs in *Gibson I* or *II* defended or had the obligation to defend the validity of the county jury system," and thus no actual conflict of interest arose from Groover's representation of both the Board of Commissioners and the petitioner. *Id.* at 189.

The opinion in *Gibson I* is silent as to the course of defense actually pursued by counsel for the Board of Commissioners. However, the manner in which the jury composition issue arose in *Gibson I* indicates that it would clearly have been in the Board of Commissioners' interests, and hence its attorneys' duty, to defend against providing funds for the plaintiff to contest the constitutionality of the jury pools on the ground that this claim lacked merit. In other words, if Groover or Childs on behalf of the Board of Commissioners could have demonstrated that the plaintiff's jury composition claim was frivolous, and thus no need for funds had been demonstrated, the lawsuit would have terminated at that point in their favor and the further issue of which defendant, the State or County, was required to provide such funds would never have arisen. Despite the fact that under Georgia law the Board of Commissioners had no duty to defend the constitutionality of the jury lists, it is apparent from the *Gibson I* opinion that a plausible threshold defense available to the Board of Commissioners in its own interest of avoiding the payment of funds was an argument that the jury lists and selection procedures were constitutional.

Groover's deposition testimony reflects that this, in fact, was the course of defense that he followed at the hearing in *Gibson I*. In the sum total of his testimony on this point, Groover states:

> [A]t the stage of the case in which I participated, the issue was should money be furnished to Mr. Gibson for prosecution of his habeas corpus proceeding and [evidence was,] as I gathered, presented to show the substances of the—of Mr. Gibson's claims, that he had meritorious claims that needed to be pursued and that it would require money to do so. And our appearance—*my appearance was on behalf of the county against the issue of providing money; not on any particular thing, but of any money.*
> ....

[I] was not there for the jury commissioners. The county commissioners, *I guess I'd say I was in opposition to what they were seeking, ... I was in opposition to the State being required to furnish money. [I] think somewhere in this business I think I suggested that that was the obligation of the State. If he [the district court] required 'em to do it, he ought to make the State do it [,] ... as opposed to Jones County.*

R. at 14, 15 (emphasis added).

In support of this position, Groover testified that he objected, on hearsay grounds, to the plaintiff's presentation of evidence concerning the racial and sexual composition of the Jones County jury pool. The course of defense followed by Groover is clear; at the *Gibson I* hearing, conducted for the sole purpose of determining if plaintiff's constitutional claims had merit, Groover represented the Board of Commissioners' interests by first arguing that neither of the defendants should be required to provide funds for the plaintiff to pursue his claims, *i.e.*, that plaintiff's claims lacked merit. Groover sought to tactically support this argument by preventing the introduction of evidence substantiating plaintiff's jury composition challenge. As a second, fallback, position in the event the court disagreed with this argument and held that the plaintiff's claims merited the expenditure of funds, Groover argued that the State, and not Jones County, should be liable.

Therefore, to the extent necessarily implied by the position that plaintiff's jury composition challenge lacked merit, the evidence reflects that it was in the Jones County Board of Commissioners' interests to, and their counsel in fact did, defend the constitutionality of the jury selection procedures and pools in *Gibson I*. We hold that the district court clearly erred in finding otherwise.

Since we hold that the evidence before the district court on remand was not substantially different from that before the *Westbrook I* court, we conclude our inquiry with a determination of whether the *West-*

*brook I* court's decision as to an actual conflict of interest was clearly erroneous and would work a manifest injustice. Applying the controlling test of *Baty*, the *Westbrook I* court held that an actual conflict of interest was present in this case because if petitioner's trial counsel had raised a jury composition challenge in his behalf, "certainly a plausible and prima facie-worthy argument in light of *Gibson*," it would have "undermined Jones County's defense in *Gibson*." 704 F.2d at 1499. Or, as phrased in terms of the more detailed evidence presented on remand, if petitioner's trial counsel had raised a jury composition challenge, a challenge counsel was certainly aware of from his involvement in the *Gibson I* hearing and which was held plausible and meritorious by the *Gibson I* court, it would have undermined the defense of another client, the Jones County Board of Commissioners, that such a challenge lacked merit in *Gibson I*. We hold that the *Westbrook I* court correctly applied the controlling *Baty* test to the facts of this case as before it and as confirmed by the remand in holding that an actual conflict of interest arose from petitioner's trial counsel's simultaneous representation of the Jones County Board of Commissioners in *Gibson I* and the petitioner.

Because the *Westbrook I* court established the law of this case, without exception, as to the presence of an actual conflict of interest once it was determined that petitioner's trial counsel actively represented Jones County's interests in the *Gibson v. Jackson* litigation, we, as well as the district court, are bound by its ruling. Accordingly, we REVERSE and REMAND this case to the district court with instructions to issue the writ of habeas corpus in accord with the *Westbrook I* court's mandate.