[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-11586
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 3, 2011
JOHN LEY
CLERK

Agency No. A072-441-110


MAROUN ZEIDAN,

                                                                    Petitioner,

versus

U.S. ATTORNEY GENERAL,

                                                                    Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(June 3, 2011)

Before WILSON, ANDERSON and BLACK, Circuit Judges.

PER CURIAM:

Maroun Zeidan seeks review of the Immigration Judge's ("IJ") and Board of

Immigration Appeals' ("BIA") respective decisions denying his application for asylum, withholding of removal, and CAT relief. In his *pro se* brief, Zeidan argues that the BIA: (1) erred in affirming the IJ's finding that he failed to demonstrate past persecution based on his Christian religion or his political opinion; (2) erred in concluding that his credible testimony was insufficient to satisfy his burden of proof for asylum based on changed country conditions, and in refusing to find that the IJ was improperly influenced by Zeidan's hunger strike and a force-feed order issued by a U.S. District Court; (3) erred in refusing to find that Zeidan satisfied his burden to show a credible fear of future persecution; and (4) erred in upholding the IJ's ruling the Zeidan was ineligible for asylum relief based on his prior felony conviction.

When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). "Insofar as the Board adopts the IJ's reasoning, we will review the IJ's decision as well." *Id.* Here, the BIA agreed with reasoning of the IJ, so we consider both decisions.

To the extent that the decision under review was based on a legal determination, review is *de novo*. *Mohammed v. Ashcroft*, 261 F.3d 1244, 1247 (11th Cir. 2001). Factual determinations, including credibility and asylum

eligibility determinations, are reviewed under the "substantial evidence test." *Kueviakoe v. U.S. Att'y Gen.*, 567 F.3d 1301, 1304 (11th Cir. 2009). We will affirm if the decision is supported by reasonable, substantial, and probative evidence of record. *Al Najjar*, 257 F.3d at 1284. This standard is "highly deferential," and we have held that a decision can be reversed only "if the evidence compels a reasonable fact finder to find otherwise." *Kueviakoe*, 567 F.3d at 1304 (quotation omitted); *Al Najjar*, 257 F.3d at 1284. Under this test, we "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*). The fact that evidence in the record may also support a conclusion contrary to the administrative findings is not enough to justify a reversal. *Id.*

## I. Past Persecution

Application of the "law of the case" doctrine is subject to *de novo* review. *Transamerica Leasing, Inc. v. Inst. of London Underwriters*, 430 F.3d 1326, 1331 (11th Cir. 2005).

> Under the "law of the case" doctrine, the "findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal." *Westbrook v. Zant*, 743 F.2d 764, 768 (11th Cir. 1984)

3

(quoting *Dorsey v. Continental Casualty Co.*, 730 F.2d 675, 678 (11th Cir. 1984)). This judicially created doctrine [] serves several important purposes, including (1) insuring that litigation on an issue will come to an end, (2) discouraging "panel shopping" at the circuit court level, and (3) assuring the obedience of lower courts to the decisions of appellate courts. *Westbrook*, 743 F.2d at 768 n. 6; *see Piambino v. Bailey*, 757 F.2d 1112, 1120 (11th Cir. 1985). The doctrine does not extend to every issue that could be ever raised in a given litigation but rather is limited to those issues previously decided; the law is clear, however, that the law of the case doctrine "comprehends things decided by necessary implication as well as those decided explicitly." *Wheeler v. City of Pleasant Grove*, 746 F.2d 1437, 1440 (11th Cir. 1984) (per curiam) (emphasis omitted; quotation omitted).

*Heathcoat v. Potts*, 905 F.2d 367, 370-71 (11th Cir. 1990).

Because the BIA and the United States Court of Appeals for the Ninth Circuit expressly determined in Zeidan's previous appeals that the original IJ was correct in finding that Zeidan had failed to meet his burden to prove past persecution—because he failed to testify credibly about the events he cited in support of his 1992 asylum claim—the IJ and BIA in Zeidan's subsequent proceedings properly ruled that Zeidan could not re-litigate the issue of past persecution. On November 14, 2001, the original IJ found Zeidan to be "wholly incredible" on matters that went to the heart of Zeidan's claim for asylum or withholding of removal, including the purported past persecution he suffered.

4

This ruling was affirmed by the BIA and the Ninth Circuit. *See Zeidan v. Ashcroft*, 119 Fed. App'x 88, 89-90 (9th Cir. 2004) (unpublished). Consistent with our precedent, Zeidan was precluded from later arguing that he suffered past persecution given the adverse ruling on past persecution in his earlier immigration proceedings, and the IJ and BIA did not err in so ruling.

## II. Asylum

An alien may qualify for asylum by presenting credible evidence showing "(1) past persecution on account of [his] political opinion or any other protected ground, or (2) a 'well-founded fear' that his political opinion or any other protected ground will cause future persecution." *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1230-31 (11th Cir. 2005). "[P]ersecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, [and] mere harassment does not amount to persecution." *Sepulveda*, 401 F.3d at 1231 (quotation marks and citations omitted); *see also Djonda v. U.S. Att'y Gen.*, 514 F.3d 1168 (11th Cir. 2008) (concluding that 36-hour detention, beating, and threat of arrest did not amount to persecution). Protected grounds are race, religion, nationality, membership in a particular social group, or political opinion. *Sanchez v. U.S. Att'y Gen.*, 392 F.3d 434, 437 (11th Cir. 2004). If substantial evidence supports the finding that an alien suffered particular harms for reasons

other than race, religion, nationality, *etc.*, the petition for review will be denied. *See, e.g.*, *Scheerer v. U.S. Att'y Gen.*, 445 F.3d 1311, 1315-16 (11th Cir. 2006).

If the petitioner "cannot show past persecution, then the petitioner must demonstrate a well-founded fear of future persecution that is both subjectively genuine and objectively reasonable." *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006). "The subjective component can be proved 'by the applicant's credible testimony that he or she genuinely fears persecution,' while the objective component 'can be fulfilled either by establishing past persecution or that he or she has a good reason to fear future persecution.'" *Id.* (quoting *Al Najjar*, 257 F.3d at 1289). The petitioner must establish "that there is 'a reasonable possibility that he or she would be singled out individually for persecution,' or that he is a member of, or is identified with, a group that is subjected to a pattern or practice of persecution." *Djonda*, 514 F.3d at 1174 (citing 8 C.F.R. § 208.13(b)(2)(iii)).

In a withholding of removal claim, an alien shall not be removed to a country if his life or freedom would be threatened on account of a protected ground. INA § 241(b)(3), 8 U.S.C. § 1231(b)(3)(A). The alien must show that it is "more likely than not [he] will be persecuted or tortured upon being returned to [his] country." *Sepulveda,* 401 F.3d at 1232 (citation omitted). An alien may make this showing in two ways. First, an alien may establish past persecution

6

based on a protected ground, in which case a rebuttable presumption is created that his life or freedom would be threatened if she returned to his country. *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003). Secondly, an alien may qualify for withholding of removal if he "can demonstrate a future threat to his life or freedom" based on a protected ground. *Id.*

To be eligible for CAT relief, an alien must demonstrate that, if removed to his country of origin, it is more likely than not he would be tortured by, or with the acquiescence of, government officials acting under color of law. 8 C.F.R. §§ 208.16(c)(2), 208.17(a), 208.18(a)(1). To establish eligibility for CAT relief, the applicant bears the burden of proving that it is more likely than not that he would be tortured if returned to his country. *Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1242 (11th Cir. 2004); *see* 8 C.F.R. § 208.16(c)(2). "Torture" is defined as "any act by which severe pain or suffering. . . is intentionally inflicted on a person for. . . any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1). The burden of proof for an alien seeking withholding of removal under the CAT, like the burden for an alien seeking withholding of removal under the INA, is higher than the burden for showing entitlement to asylum. *Al Najjar*,

7

257 F.3d at 1303.

We have held that adverse credibility determinations must be made explicitly. *See Yang v. U.S. Att'y Gen.*, 418 F.3d 1198, 1201 (11th Cir. 2005) (holding that the IJ must make "clean determinations of credibility."). In asylum applications filed on or after May 11, 2005, an adverse credibility determination may be based on any inconsistency, regardless of whether the inconsistency goes to the heart of the claim. *Tang v. U.S. Att'y Gen.*, 578 F.3d 1270, 1277 (11th Cir. 2009); INA § 208(b)(1)(B)(iii); 8 U.S.C. § 1158(b)(1)(B)(iii). "Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on . . . the consistency between the applicant's . . . written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made)." 8 U.S.C. § 1158(b)(1)(B)(iii). However, "[t]he weaker the applicant's testimony, . . . the greater the need for corroborative evidence." *Yang*, 418 F.3d at 1201. "Once an adverse credibility finding is made, the burden is on the applicant alien to show that the IJ's credibility decision was not supported by 'specific, cogent reasons' or was not based on substantial evidence." *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1287 (11th Cir. 2005) (citations omitted).

If an alien's testimony is credible, it may be sufficient to satisfy his burden

of proof required to establish asylum eligibility. *Kueviakoe*, 567 F.3d at 1304. However, a denial of asylum relief can be supported solely by an adverse credibility determination. *Id.* at 1304-05.

The record belies Zeidan's claim on appeal that his testimony at the 2009 hearing was credible. In fact, the IJ provided detailed findings to support his conclusion that Zeidan had not testified credibly regarding his claim for asylum based on changed country conditions. The IJ based his credibility finding on inconsistences in Zeidan's own testimony, dramatic inconsistencies between Zeidan's 1992 and 2009 asylum applications, and inconsistencies between Zeidan's and his brother's testimony about their family still in Lebanon. The record here thus demonstrates that there was substantial evidence to support the IJ's and BIA's respective adverse credibility determinations, and these determinations alone were sufficient to deny Zeidan's asylum claim. *Kueviakoe*, 567 F.3d at 1304-05 (denial of asylum relief can be supported solely by an adverse credibility determination).

Also, Zeidan offers no citation to the record or other proof to support his bare assertion that the IJ was biased or improperly influenced by his hunger strike or the force-feed order entered by the U.S. District Court. Our review of the record reveals no evidence to support Zeidan's assertion in this regard.

9

### III. Future Persecution

As discussed, the IJ and BIA found Zeidan not credible regarding his claim that he had a reasonable fear of future persecution by Hezbollah if returned to Lebanon. Regardless, the IJ and BIA alternatively found that Zeidan failed to meet his burden to show that it was more likely than not that he would be persecuted. There is substantial evidence in the record to support the IJ's and BIA's conclusion in this regard.

For example, the IJ reasoned that Zeidan proffered only generalized assumptions about Hezbollah's view of the Christian-based Lebanese Forces ("LF") to which Zeidan once belonged, that he had only a limited knowledge of the current political structure and environment in Lebanon, that he provided no proof that anyone would recognize him after 17 years outside the country, and that he had family in Lebanon (all Christian, and one a former LF member) who have lived there without incident. Further, State department data and a recent study by Canadian authorities specifically cited by the IJ showed no widespread problems for Christians in Lebanon, and the supporting documents also showed that there was a peace accord signed between Hezbollah and the Lebanese Christian leadership in 2008 (in Doha, Qatar), there is a power-sharing agreement between Hezbollah and the Christian leadership, and that Hezbollah is a clear minority in

the parliament.

The IJ further noted that Zeidan's expert did not offer any specifics regarding any persecution danger to Zeidan, but rather only a general belief that former LF members (like Zeidan) would be targeted by Hezbollah. The IJ also reasoned that the documents provided by Zeidan to corroborate his claim only confirmed his status as a Christian and former LF member, but did not provide any support for his claim that he would likely be persecuted as a result of these facts.

That several Christian members of Zeidan's family, including a brother who was also a member of the LF, continue to live in Lebanon without incident provides further evidence to support the BIA's and IJ's rulings. *See e.g.*, *Ruiz*, 440 F.3d at 1259 ("Ruiz's claim was contradicted by his testimony that his son and his parents have remained unharmed in the region of Colombia where Ruiz allegedly was threatened."). Accordingly, Zeidan has not shown that a conclusion contrary to that reached by the IJ and BIA is compelled on this record. *See Adefemi*, 386 F.3d at 1027.

Finally, we are without jurisdiction to review Zeidan's claim for CAT relief. His brief to the BIA contained only a single conclusory reference to the Convention Against Torture, and his brief to this Court contains only three general assertions of entitlement to CAT relief, but no legal argument. Zeidan's CAT

claim was therefore not fully exhausted at the BIA level, and was not adequately presented here, and is dismissed. *Amaya-Artunduaga*, 463 F.3d at 1249-51.

## IV. Eligibility for Asylum

A denial of asylum relief can be supported solely by an adverse credibility determination. *Kueviakoe*, 567 F.3d at 1304-05. Further, an alien convicted of an aggravated felony is ineligible for asylum. INA §§ 208(b)(2)(A)(ii), (B)(i). Section 237 provides:

> Any alien who—(I) is convicted of a crime involving moral turpitude committed within five years (or 10 years in the case of an alien provided lawful permanent resident status under section 1255(j) of this title) after the date of admission, and (II) is convicted of a crime for which a sentence of one year or longer may be imposed, is deportable.

INA § 237(a)(2)(A)(i)(I), 8 U.S.C. § 1227(a)(2)(A)(i)(I). An aggravated felony includes an offense involving "fraud or deceit in which the loss to the victim or victims exceeds $10,000," as well as an *attempt* or conspiracy to commit such an offense. INA § 101(a)(43)(M)(i), (U), 8 U.S.C. § 1101(a)(43)(M)(i), (U) (emphasis added). Effective April 1, 1997, Congress amended the definition of "aggravated felony" to include "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year." *See Mohammed v. Ashcroft*, 261 F.3d 1244, 1248 (11th Cir. 2001); INA

§ 101(a)(43)(G), 8 U.S.C. § 1101(a)(43)(G).  The expanded definition applies retroactively to convictions that predate the amendment.  *Id.* at 1250.

We need not reach the question of whether Zeidan's prior felony conviction rendered him ineligible for asylum relief.  The IJ (and the BIA) expressly deemed Zeidan not credible on the issue of future persecution—just as the original IJ (and the BIA) found him not credible on the issue of past persecution.  These adverse credibility findings alone were sufficient to deny Zeidan's asylum claim, assuming he was even eligible.  *See Kueviakoe*, 567 F.3d at 1304-05.

Upon review of the record and consideration of the parties' briefs, we deny the petition in part and dismiss in part.

**PETITION DENIED IN PART, DISMISSED IN PART.**