[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-13770

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

THOMAS F. SPELLISSY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:05-cr-00475-JDW-TGW-1

_____

Before JILL PRYOR, BRANCH, and MARCUS, Circuit Judges.

PER CURIAM:

Thomas F. Spellissy, a former federal prisoner no longer in custody, appeals the district court's order denying his *pro se* petition for writ of error *coram nobis*. He argues that: (1) based on the Supreme Court's recent decisions in *Percoco v. United States*, 598 U.S. 319 (2023), and *Ciminelli v. United States*, 598 U.S. 306 (2023), the conduct for which he was charged and convicted of is no longer proscribed; (2) his convictions are invalid based on *McDonnell v. United States*, 579 U.S. 550 (2016), and *Skilling v. United States*, 561 U.S. 358 (2010), as he's already argued in prior appeals; and (3) he was factually innocent because the government offered no evidence showing that he conspired to commit bribery, or honest-services wire fraud, to obtain money or property. After thorough review, we affirm.

We review a district court's denial of a petition for writ of error *coram nobis* for abuse of discretion, "keeping in mind that an error of law is an abuse of discretion *per se*." *United States v. Peter*, 310 F.3d 709, 711 (11th Cir. 2002) (quotations omitted).

The All Writs Act, 28 U.S.C. § 1651(a), provides federal courts with the authority to issue writs of error *coram nobis*. *United States v. Mills*, 221 F.3d 1201, 1203 (11th Cir. 2000). A writ of error *coram nobis* is a remedy to vacate a conviction and is available, unlike relief under 28 U.S.C. § 2255, when the petitioner has served his sentence and is no longer in custody. *Peter*, 310 F.3d at

712. The *coram nobis* writ is an extraordinary remedy that is only available "in compelling circumstances where necessary to achieve justice." *Mills*, 221 F.3d at 1203.

A court can only provide *coram nobis* relief if: (1) no other avenue of relief is available or has been available; and (2) the petitioner presents a fundamental error that made the proceedings irregular and invalid. *Alikhani v. United States*, 200 F.3d 732, 734 (11th Cir. 2000). The Supreme Court has told us that an error is sufficiently fundamental to make the proceedings irregular and invalid when, for example, "a defendant whose original sentence had been imposed at least in part upon the basis of convictions secured without the assistance of counsel" -- in other words, where there was "misinformation of constitutional magnitude." *United States v. Addonizio*, 442 U.S. 178, 187 (1979). Similarly, a jurisdictional error is, by its nature, of such a fundamental character as to render proceedings irregular and invalid; this is because "[w]hen a court without jurisdiction convicts and sentences a defendant, the conviction and sentence are void from their inception and remain void long after a defendant has fully suffered their direct force." *Peter*, 310 F.3d at 715 (quotations omitted).

The *coram nobis* writ also requires that the alleged error must be one that has not been "put in issue or passed upon." *Moody v. United States*, 874 F.2d 1575, 1576 (11th Cir. 1989). This requirement is consistent with the law-of-the-case doctrine, under which both district and appellate courts are generally bound to follow a prior appellate decision in the same case. *Thomas v. Unit-*

*ed States*, 572 F.3d 1300, 1303 (2009).  The law-of-the-case doctrine "generally operates to preclude a reexamination of issues decided upon appeal, either by the district court on remand or by the appellate court itself upon a subsequent appeal."  *Westbrook v. Zant*, 743 F.2d 764, 768 (11th Cir. 1984) (quotations omitted).

Under 18 U.S.C. § 1343, it is illegal for any person to devise, or intend to devise, a scheme to defraud, or obtain money or property by means of false or fraudulent pretenses, via wire. 18 U.S.C. § 1343.  Under 18 U.S.C. § 1346, the term "scheme" includes a scheme to deprive someone of the "intangible right of honest services."  18 U.S.C. § 1346.

In *Percoco*, a private citizen was convicted of honest-services wire fraud, in violation of 18 U.S.C. §§ 1343, 1346, and 1349, based on conduct that occurred during an 8-month break in his employment at the New York governor's office.  *Percoco*, 598 U.S. at 322–23.  During his hiatus, Percoco accepted a bribe from a real estate developer to assist the developer with obtaining state funding on a project.  *Id.* at 323.  At trial, the court instructed the jury that Percoco had a duty to provide honest services to the public if (1) he "dominated and controlled any governmental business," and (2) government officials relied on him because of his special relationship with the government.  *Id.* at 324–25.  On *certiorari* review, the Supreme Court reversed and remanded.  *Id.* at 333.  It held that the district court's jury instruction on the duty to provide honest services was erroneously vague, and the resulting error was not harmless.  *Id.* at 330–32.  However, the Supreme

23-13770                Opinion of the Court                5

Court rejected Percoco's argument that a private citizen can never be convicted of honest-services fraud, reasoning that citizens can serve as agents of the government. *Id.* at 329. It explained that, because "an agent of the government has a fiduciary duty to the government and thus to the public it serves . . . individuals who are delegated authority to act on behalf of a public official and to perform government duties have a duty to provide honest services." *Id.* at 329–30 (quotations omitted).

In *Ciminelli*, the defendant, a private citizen, and others, were convicted of wire fraud, in violation of 18 U. S. C. § 1343, and conspiracy to commit the same under § 1349, based on a bid-rigging scheme that enabled Ciminelli's construction company to win bids for state-funded projects, which were administered by a nonprofit organization. 598 U.S. at 310. In the operative indictment, and at trial, the government relied solely on the Second Circuit's right-to-control theory of wire fraud, which enabled the government to establish wire fraud by showing that Ciminelli schemed to deprive a victim of "potentially valuable economic information necessary to make discretionary economic decisions." *Id.* Consistent with that theory of liability, the district court instructed the jury that, under § 1343, the term "property" included "intangible interests, such as the right to control the use of one's assets." *Id.* at 311. Thus, the jury could find that Ciminelli harmed the nonprofit's right to control its assets if the nonprofit was deprived of "potentially valuable economic information that it would consider valuable in deciding how to use its assets." *Id.*

On *certiorari* review, the Supreme Court reversed and re-manded, holding that the Second Circuit's right-to-control theory could not form the basis for a conviction of fraud under federal law because "[t]he right to valuable economic information needed to make discretionary economic decisions [wa]s not a traditional property interest." *Id.* at 316–17.  The Supreme Court, however, re-affirmed that the intangible right of honest services constituted a protected property interest, noting that Congress included the "intangible right of honest services" in 18 U.S.C. § 1346.  *Id.* at 313, 315.

Here, the district court did not abuse its discretion by deny-ing Spellissy's petition for writ of error *coram nobis*.  For starters, Spellissy's arguments based on *McDonnell* and *Skilling* were previ-ously raised and rejected by this Court, and he has not shown ei-ther that controlling authority has since made a contrary decision, or that the previous decisions were clearly erroneous.  *See Thom-as*, 572 F.3d at 1303; *see also Westbrook*, 743 F.2d at 768.  As for Spellissy's argument that he was factually innocent, he has not set forth any new evidence or cited any authority showing that the conduct, for which he was charged and convicted of, is no longer proscribed.  *See Peter*, 310 F.3d at 711, 715.

Moreover, we find no merit to Spellissy's argument that *Percoco* and *Ciminelli* established a fundamental error rendering his criminal proceeding irregular or invalid, because Spellissy's jury instructions did not contain the flawed instructions or legal theo-ries at issue in those cases.  Unlike in *Percoco*, the jury at Spellissy's

23-13770                Opinion of the Court                7

trial was *not* instructed that a private citizen could be convicted of honest-services wire fraud if he "dominated and controlled" government business.  Rather, Spellissy's indictment alleged -- and the district court correctly found -- that William E. Burke, a private contractor employee to whom Spellissy made illegal payments and who was an employee of a private contractor assigned to a division of the United States Special Operations Command, was a public official, acting on behalf of the Department of Defense.  *See United States v. Spellissy*, 710 F. App'x 392, 393 (11th Cir. 2017) (unpublished); *United States v. Spellissy*, 243 F. App'x 550, 550–51 (11th Cir. 2007) (unpublished).  Thus, the district court's instruction -- that the definition of public official "includes an employee of a private corporation who acts for or on behalf of the federal government pursuant to a contract" -- was in line with the traditional agency theory that *Percoco* expressly acknowledged as valid.  598 U.S. at 329–30. Further, the district court's instruction that public officials "owe a duty to the public to act in the public's best interest," and if an official "makes his decision based on [his] own personal interests -- such as accepting a bribe -- the official has defrauded the public of the official's honest services," also conformed with the Supreme Court's reasoning that agents of the government have a duty to provide honest services.  *Id*. So, unlike in *Percoco*, Spellissy's jury instructions did not violate his due process rights by being too vague. *Id*.

Finally, unlike in *Ciminelli*, the government's theory of liability was *not* the right to control the right to "valuable economic information needed to make discretionary economic decisions"--

which the Supreme Court held was not a traditional property interest that could form the basis of a fraud conviction. *See Ciminelli*, 598 U.S. at 316–17. Instead, Spellissy was charged and convicted of conspiring to bribe a public official in an attempt to deprive the public of the right to the official's honest services. Contrary to Spellissy's assertion, *Ciminelli* expressly recognized that the "intangible right of honest services" is a statutorily protected property interest. 18 U.S.C. § 1346; *Ciminelli*, 598 U.S. at 313, 315. Therefore, the jury instructions on honest services in Spellissy's case provided the jury with the requisite clarity and guidance about what conduct was proscribed. *See Percoco*, 598 U.S. at 331. And neither *Percoco* nor *Ciminelli* had the retroactive effect of rendering the conduct, for which Spellissy was charged and convicted of, non-criminal. *See Peter*, 310 F.3d at 711, 715.

**AFFIRMED.**