**Steven Ray FRANKS, Pamela S. Franks, Plaintiffs-Appellees,**

v.

**J.A. BOLDEN, Davis G. Nye, Paul Townsel, John Butler, Ernie Ball, and Jerry Campbell, Defendants-Appellants.**

No. 84–7343.

United States Court of Appeals, Eleventh Circuit.

Nov. 4, 1985.

Herbert S. Sanger, Jr., Gen. Counsel, Tennessee Valley Authority, James E. Fox, Associate Gen. Counsel, Robert E. Washburn, Donna L. Pierce, Edwin W. Small, Knoxville, Tenn., for defendants-appellants.

N. Michael Suttle, Florence, Ala., T. Michael Putnam, Florence, Ala., and Dave Beuoy, Russellville, Ala., for plaintiffs-appellees.

Before VANCE and JOHNSON, Circuit Judges, and MORGAN, Senior Circuit Judge.

VANCE, Circuit Judge:

The primary question in this case is whether employees of the Tennessee Valley Authority charged with failing to provide a safe working environment are entitled to official immunity for their alleged acts of negligence. We conclude that immunity is not available for the particular acts in question and affirm the jury verdict in favor of the plaintiffs.

## I. Facts and Procedural History

Beneath the unit 2 nuclear reactor at the TVA's Browns Ferry power plant sits a giant metal torus. This hollow doughnut serves as a receptacle for steam from the reactor in the event that an emergency forces the reactor to shut down. Plaintiff Steven Ray Franks [1] and three co-workers, all TVA employees, were assigned to work inside the torus. Because the torus was

---

**1.** Although Steven Franks' wife is also a plaintiff, we will use the term "Franks" to refer both to Steven individually and to him and his wife together.

contaminated with radioactivity, each was required to wear protective clothing: heavy coveralls, rubber gloves and boots, a full face mask respirator, and a rainsuit. The job was expected to take four hours.

As it turned out, the major hazard inside the torus that day was not radioactivity, but heat. It was a hot day and the temperature inside the torus was at least in the 90's and may have been as high as 115. The heavy, largely airtight protective clothing made things worse. Ventilation was poor; although a ventilation system for the torus was under construction, it had not yet been completed. Because of the heat all four men were forced to leave the torus after no more than 25 minutes. Three of the four, including Franks, were diagnosed as suffering from heat exhaustion. It is undisputed that heat stress is a major hazard to workers dressed in protective outfits such as those worn by Franks and his colleagues.

Although heat exhaustion had not previously resulted in serious injury at Browns Ferry and is normally a temporary condition, Franks claims long-term consequences termed "chronic hyperventilation syndrome." He has difficulty coping with hot or humid conditions and is unable to participate in strenuous activities. He contends that as a result, his work opportunities have been limited.

Franks filed suit against six TVA employees, charging that they had negligently failed to correct or discover a dangerous working condition—the high temperatures inside the torus—which led to his injuries. All six defendants had some responsibility for plant safety, and all were aware of the risk of heat stress which accompanies the wearing of heavy protective clothing.

They all either knew that the torus ventilation system had not been completed or did not know whether the system was operational. They were all aware that some workers might be required to enter the torus in heavy protective clothing. Four of the defendants were present on the day Franks was injured and knew that a crew was being assigned to the specific job Franks and his coworkers were given. The job could have been postponed until the ventilation system was completed. An investigative report prepared by defendant Bolden, a safety engineer, concluded that the mishap was caused by the high temperature within the torus coupled with the heavy protective clothing, and stated that better ventilation could have prevented the incident.

After trial, a district court jury found that all six defendants were guilty of negligence and awarded Franks damages totaling $5000. The defendants now appeal, advancing two contentions for our consideration: first, that they are immune from liability under the "official immunity" doctrine, and second, that the district court erred in not directing a verdict or entering judgment notwithstanding the verdict for the defendants on the issue of negligence.[2]

## II. *Discussion*

### A. *Official Immunity*

The defendants first contend that they are immune from liability under the official immunity doctrine set forth in *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959) (plurality opinion). We conclude that official immunity does not extend to the operational acts at issue in this suit.

**2.** The defendants also contend that this action is barred by the exclusive remedy provisions of the Federal Employees' Compensation Act, 5 U.S.C. §§ 8101–8193, which provide that "[t]he liability of the United States or an instrumentality thereof under [the FECA] ... is exclusive and instead of all other liability of the United States or the instrumentality." 5 U.S.C. § 8116(c). Although the defendants raised this defense in their answer to Franks' complaint, the issue was not contained in their statement of positions set forth in the district court's pre-trial

order and was not raised in their motions for a directed verdict and for judgment notwithstanding the verdict. We are not presented with any unusual circumstances which would justify our consideration of an issue not pressed at trial. *See Stanspec Corp. v. Jelco, Inc.*, 464 F.2d 1184, 1187 (10th Cir.1972); *King v. Stevenson*, 445 F.2d 565, 570–71 (7th Cir.1971); *cf. Martinez v. Mathews*, 544 F.2d 1233, 1237 (5th Cir.1976). *See also Allman v. Hanley*, 302 F.2d 559, 562–64 (5th Cir.1962) (rejecting argument that FECA bars suits against co-workers).

The application of the official immunity doctrine in a particular case depends on "a discerning inquiry into whether the contributions of immunity to effective government ... outweigh the perhaps recurring harm to individual citizens." *Doe v. McMillan*, 412 U.S. 306, 320, 93 S.Ct. 2018, 2028, 36 L.Ed.2d 912 (1973). Although there is no "ready-made answer" as to whether a defendant is entitled to immunity, *id.*, the Supreme Court has indicated immunity is available to federal employees exercising discretionary functions and acting within the outer perimeters of their duties. *See id.* at 322–23, 93 S.Ct. at 2029–30; *Barr*, 360 U.S. at 574–75, 79 S.Ct. at 1341; *Johns v. Pettibone Corp.*, 769 F.2d 724, 727 (11th Cir.1985). We have recently noted, however, that not every act which might literally be termed "discretionary" is sufficient to invoke the immunity doctrine. Indeed, "[i]n the strict sense, every action of a government employee, except perhaps a conditioned reflex action, involves the use of some degree of discretion." *Pettibone*, 769 F.2d at 728 (quoting *Swanson v. United States*, 229 F.Supp. 217, 219–20 (N.D. Cal.1964)). To prevent the discretionary function requirement from being rendered meaningless, we have held that official immunity may be extended only to those acts of federal employees involving planning or policy considerations. *See Pettibone*, 769 F.2d at 728–29; *Alabama Electric Cooperative, Inc. v. United States*, 769 F.2d 1523, 1525–28 (11th Cir.1985). Where, on the other hand, the acts in question concern day-to-day operations, official immunity is not available.

The acts in question here were clearly operational in nature;[3] indeed, the defendants do not even claim that any real policy considerations were implicated. Instead, they contend that they are entitled to immunity because of the adverse impact the threat of a suit would have on the morale and efficiency of TVA employees. This concern cuts far too broadly. It suggests that immunity should be available for any and all work-related acts of government employees. Accepting that contention would too greatly extend the limited immunity contemplated by *Barr*, *McMillan*, and *Pettibone*. Defendant's argument also does not account for the special nature of certain government employment, which is the rationale for official immunity. The threat of a lawsuit is something with which, under our system of justice, private employees must regularly contend. Only the "contributions of immunity to effective government," *McMillan*, 412 U.S. at 320, 93 S.Ct. at 2028, justify immunity for workers employed by the United States. Where, as here, the acts of federal employees have no noticeable implications for government policy, those employees are no more entitled to be free from responsibility for their acts than are employees in the private sector.

**B. *Sufficient Evidence of Negligence***

The defendants' other contention is that the district court should have entered a directed verdict or a judgment notwithstanding the verdict on the ground that Franks failed to present sufficient evidence of negligence to create a jury question. Under Alabama law, a plaintiff seeking to prevail on a claim of negligence must prove the existence of four elements: a legal duty on the part of the defendant, breach of that duty, proximate cause, and resulting injury. *Jones v. Newton*, 454 So.2d 1345, 1348 (Ala.1984). The defendants argue that Franks failed to prove breach of duty and proximate cause.[4] We disagree.

The defendants' position is essentially based on the argument that they followed normal operating procedures

---

3. In *Pettibone* we remanded the case to the district court for factfinding on the issue of whether the acts in question were discretionary. Here, however, the district court has already conducted a hearing on the immunity issue at which the defendants had the opportunity to explain the policy implications of an adverse ruling. Even construing all the evidence in the record in the light most favorable to the defend-

ants, we see no way in which the acts in question can be termed anything but operational.

4. Because the defendants do not raise the issue on appeal, we do not decide whether Franks established the existence of the first factor—existence of legal duty—with respect to all six defendants.

which had never before resulted in injury. They argue that this safety record shows not only that they acted reasonably and fulfilled their duty of care, but also that Franks' injury was not foreseeable and therefore not proximately caused by their actions. We agree that the evidence presented by Franks on the issue of breach of duty is less than compelling. Both breach of duty and proximate cause, however, are issues of fact normally within the province of the jury. The jury could have reasonably found that because the defendants were aware that heat stress was a serious hazard for workers dressed in heavy protective clothing, they also knew or should have known that heat stress could lead to consequences more severe than the usual short period of illness. We concur in the district court's conclusion that the evidence does not point "so strongly and overwhelmingly in favor" of the defendants, *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969) (en banc), as to justify overturning the jury's verdict.

AFFIRMED.