Maggie Bell **HEATHCOAT**, as Administratrix for the Estate of Leonard James Heathcoat, Deceased, Plaintiff-Appellee,

v.

Karl **POTTS**, et al., Defendants-Appellants.

Nos. 84–7805, 85–7288.

United States Court of Appeals, Eleventh Circuit.

June 10, 1986.

Herbert S. Sanger, Jr., Gen. Counsel, James E. Fox, Assoc. Gen. Counsel, Robert C. Glinski, Ralph E. Rodgers, Tenn. Valley Authority, Knoxville, Tenn., for defendants-appellants.

W. Lee Pittman, Emond & Vines, Kathryn H. Sumrall, Elizabeth P. Jones, Birmingham, Ala., for plaintiff-appellee.

Before GODBOLD, Chief Judge, JOHNSON, Circuit Judge, and TUTTLE, Senior Circuit Judge.

GODBOLD, Chief Judge:

These consolidated appeals arise from the death of Leonard Heathcoat while he was employed by TVA in Muscle Shoals, Alabama under a personal services contract for temporary work.

Heathcoat was working on the dismantling of a building at TVA's National Fertilizer Development Center. His job was to cut steel supports below the roof as part of the effort to remove the roof. He went upon the roof to help pry loose concrete slabs, and pried up one or two slabs, but the next slab collapsed beneath him and he fell approximately 50 feet to his death.

Plaintiff, the widow as administratrix, filed this wrongful death action, pursuant to Alabama law, in state court, against seven supervisors and staff specialists of TVA, seeking damages. The case was removed to the district court.

Plaintiff alleged that the defendants failed to provide her husband a safe place and environment in which to work and did not properly control the conditions, methods, and manner in which work was performed. The defendants answered and moved for summary judgment on the grounds that (1) they were federal supervisory employees exercising discretionary functions and acting within the outer perimeters of their lines of duty and thus are absolutely immune from this state tort ac-

tion; (2) plaintiff's claim is barred by the release contained in Heathcoat's personal services contract with TVA; and (3) the action is barred by the exclusive remedy provisions of FECA, 5 U.S.C. § 8116(c) (1982), because the defendants were acting as alter egos or instrumentalities of TVA in fulfilling duties that TVA owed Mr. Heathcoat.

Following discovery, plaintiff responded to defendants' motion for summary judgment. The district court, without a hearing, denied defendants' motion without any statement of reasons.

■ Defendants filed a timely notice of appeal from the district court's order pursuant to 28 U.S.C. § 1291, on the ground that the denial of official immunity was appealable under the collateral order doctrine. This became case No. 84–7805. Contemporaneously defendants moved the court to certify under 28 U.S.C. § 1292(b) the two remaining questions presented by their motion for summary judgment. The district court granted the motion, this court granted permission to appeal, and this appeal became case No. 85–7288. The two appeals were consolidated.

A number of cases have permitted collateral order appeals from denial of a claim of absolute immunity. *See Williams v. Collins,* 728 F.2d 721 (5th Cir.1984); *Chavez v. Singer,* 698 F.2d 420 (10th Cir.1983); *Evans v. Dillahunty,* 711 F.2d 828 (8th Cir. 1983); *McSurely v. McClellan,* 697 F.2d 309 (D.C.Cir.1982); *Forsyth v. Kleindienst,* 599 F.2d 1203 (3rd Cir.1979). Heathcoat contends that this case is not within *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) because it does not present a serious and unsettled question. We hold that *Cohen* applies. The unsettled nature of a serious question is demonstrated by events in this court that followed the taking of the instant appeal.

In March 1985 we held in *Johns v. Pettibone Corp.,* 755 F.2d 1484 (11th Cir.1985) that defendant TVA employees enjoyed absolute immunity for ordinary torts committed within the scope of their jobs unless the tort alleged was of constitutional magnitude. On August 26, 1985 the court withdrew its March opinion and entered another opinion. On petition for rehearing and rehearing en banc, on November 12, 1985, the court deleted part C of the August 26 opinion and substituted a new part C, covering the immunity issue. The August 26 opinion, as amended by the opinion of November 12, appears at 769 F.2d 724 (11th Cir. 1985).

Intervening in these events, a different panel handed down for the court on November 4, 1985, *Franks v. Bolden,* 774 F.2d 1552 (11th Cir.), *reh'g en banc denied,* 781 F.2d 905 (1985), holding that official immunity did not extend to acts performed by TVA employee-defendants concerning day to day operations and not involving planning or policy consideration. Despite the later issue date of the opinion, *Franks* cites to the November 12 amended opinion entered in *Johns.*

Also to be considered is *Hendrix v. Patterson,* 776 F.2d 1056 (11th Cir.) (order without opinion), *reh'g en banc denied,* 779 F.2d 60 (1985), an unpublished opinion issued October 24, 1985 and handed down for the court by the same panel that decided *Franks.* Citing both *Franks* and the November 12 opinion in *Johns,* it holds summarily that the acts of the TVA defendants at issue were operational in nature and involved no governmental policy or planning concerns, thus official immunity was not available.

■ Despite this confusing sequence of events the governing principle is clear: a government employee enjoys immunity only if the challenged conduct is a discretionary act *and* is within the outer perimeter of the act or the line of duty. *Johns,* 769 F.2d at 728. "Discretionary acts" involve planning or policy considerations and do not concern day to day operations. *Franks,* 774 F.2d at 1555.

In *Johns* the district court granted summary judgment to the defendants on the ground that plaintiff's decedent was an invitee on TVA property and the individual

TVA defendants had no duty to warn invitees of the hazard involved. On appeal the TVA defendants asserted immunity as an alternative ground supporting the summary judgment, although the issue had not been mentioned by the court in granting summary judgment. This court declined to reach the issue under these circumstances and remanded it to the district court to deal with it. In *Franks* the district court had conducted a hearing on the immunity issue, and the case had been tried before a jury with a verdict for plaintiffs. Thus the issue was before the court of appeals on a full record, and this court held, construing all the evidence in the light most favorable to the TVA defendants, that there was no way in which the acts in question could be termed anything but operational. 774 F.2d at 1555 n. 3. *Hendrix* also had been tried to a jury which returned a verdict for plaintiffs. Presumably, as in *Franks,* there was a full record for this court to consider.

In this case the seven individual defendants are: Karl Potts, chief maintenance branch, division of chemical operations; Clyde Snoddy, general foreman; Ray Montgomery, hazard control specialist; Charles Davis, assistant office manager; Kenneth Rhoden, assistant branch chief, maintenance branch; Robert Mitchell, assistant director, division of chemical development; and Herbert Plyler, safety specialist.

Each of these defendants was in some fashion a supervisor of the removal operations being conducted by TVA's Office of Agricultural and Chemical Development. The summary judgment record contains job descriptions for each of the defendants and the defendants' answers to interrogatories propounded by the plaintiff. The job descriptions are detailed but abstract. The responses to the plaintiff's interrogatories are defensive and unilluminating. On this record we find no error in the denial of summary judgment on immunity grounds; whether, on a fuller development of the facts, an immunity defense might prove meritorious is for the district court.

### FECA bar

Plaintiff made a claim for her husband's death under the Federal Employees' Compensation Act (FECA), 5 U.S.C. §§ 8101–8193. The defendants contend that the exclusive remedy provision of FECA, 5 U.S.C. § 8116(c), bars this suit.[1] FECA is silent on the matter of co-employee suits. FECA provides that if the United States and its "instrumentalities" are liable under its provisions, recovery under this act is the employee's exclusive remedy against these parties. 5 U.S.C. § 8116(c) (1982). In *Allman v. Hanley,* 302 F.2d 559, 563 (5th Cir.1962), this court held that this provision does not bar suits by co-employees. The Sixth Circuit in *Bates v. Harp,* 573 F.2d 930, 935 (6th Cir. 1978), adopted the Fifth Circuit approach. Defendants try to distinguish these cases on two grounds. First, they argue that these cases only decided the issue of whether the statute created a per se bar to suits against co-employees and therefore courts are free to determine on a case by case basis whether a particular co-employee is an "instrumentality." This distinction fails because the courts in *Allman* and *Bates* held that absent specific language the statute should not be construed to abrogate the common law right to sue a co-employee.

Defendants also attempt to avoid the bite of *Allman* by arguing that the court in *Allman* ruled that this statute should be construed in accordance with the law in the majority of the states and that since the decision in *Allman* the majority of states have adopted a contrary rule. This argument fails for two reasons. First, the *Allman* court did not establish such a rule; it only looked to the law of the majority of states to determine what the common law was so that it could apply the canon of statutory construction that a court will as-

1. The court in *Franks* declined to address this issue because it had not been presented to the district court. 774 F.2d at 1554 n. 2.

sume that Congress changed the existing law when the statute shows a clear manifestation of intent on the part of Congress to do so. Second, defendants' proposed rule would allow states to change the contours of established federal law where there is no indication that Congress had any intention of delegating such power to the states. As just noted, the court in *Allman* only looked to the common law of the states to determine the context in which Congress acted; it did not decide that state law controls interpretation of federal law.

■ Defendants' final contention is that this suit is barred because the Alabama Supreme Court in *Slagle v. Parker,* 370 So.2d 947 (Ala.1979), held that provisions of the Workmen's Compensation Act immunized co-employees from wrongful death suits. *See* Ala.Code 25–5–11. There is no indication that the TVA is covered by the Alabama Workmen's Compensation Act. The fact that the Alabama legislature has relieved employees of participating employers from certain liabilities does not imply that they wished to relieve employees of the federal government of the same liability. In the first situation, the relief is part of one compensation scheme enacted by the state; the second situation would involve applying part of that scheme to an unrelated compensation scheme.

### Waiver

■ As we have pointed out Heathcoat was covered by FECA and payments are being made to plaintiff pursuant to its terms. The defendants' waiver argument is based upon paragraph 6 of the contract under which Heathcoat was employed, which provided:

6. In the event that Contractor sustains personal injuries in the course of and arising out of the performance of services or travel under this contract and such injuries do not fall within the coverage of the Federal Employees' Compensation Act, TVA agrees to pay the injured party such medical expenses as in the opinion of TVA's Medical Director may be necessary as a part of proper and adequate treatment for such injuries. In consideration of such agreement by TVA, Contractor hereby waives any claim, demand, action, or cause of action that Contractor may have against the United States, TVA, its agents, employees, or Contractors arising out of, resulting from, or in any way connected with such personal injuries. Contractor agrees to observe all safety rules required by TVA.

This waiver is "in consideration of TVA's effort to protect the contractor *if he was not adequately protected under FECA.*" (emphasis supplied). This extension of coverage by TVA (its "effort") fills a hole in the contractor's protection by affording supplemental compensation-type benefits for non-FECA claims.

For its part, by the first sentence of paragraph 6, TVA agrees to pay medical expenses for such a non-FECA injury. Thus: If a "contractor sustains personal injuries ... and such injuries do not fall within the coverage of [FECA]...." then TVA agrees to pay "such medical expenses" as sustained for treatment "for such injuries."

In consideration of TVA's undertaking, the second sentence of paragraph 6, the contractor waives claims "arising out of, resulting from, or in any way connected with *such injuries.*" The "such injuries" the claims for which the contractor gives up by the second sentence are the same "such injuries" that TVA agrees to become responsible for by the first sentence, that is, *claims falling outside of FECA.* The contractor gets the added protection of compensation-type benefits for injuries not falling within the applicable compensation act, and he waives his right to sue for the injuries included within this additional coverage. This is a square trade-off. It is the historical trade-off where compensation-type benefits are provided.

---

Defendants contend that Heathcoat waived any cause of action for injuries arising out of the performance of services under his contract. This bar to the whole universe of injuries would assign to "such personal injuries", in the second sentence, a meaning that sweeps much more broadly than the "such injuries", "such medical expenses," and "such injuries" as they appear in the first sentence. This reading is not supported by the language of paragraph 6 itself or anything else in the record. It is an implausible reading of paragraph 6 and an implausible trade-off as well.

The proof of the pudding—that the "such personal injuries" that are waived in the second sentence do not mean the whole universe of injuries sustained under a contract with TVA—is that such a waiver would bar Heathcoat's FECA claim. It would be a useless act for TVA to extract a waiver for a claim covered by FECA, which contains its own exclusive remedy clause (which TVA asserts as a bar). And, if the defendants' argument were correct, the FECA benefits that TVA is currently paying to plaintiff's estate are being paid even though they were waived by paragraph 6. Thus defendants' interpretation is inconsistent with TVA's own interpretation of paragraph 6.

The overall scheme is straightforward, clear and simple:

(1) Injuries under FECA are covered by FECA itself, which contains its own limitations on right to sue.

(2) TVA has supplemented FECA by agreeing to pay medical expenses for non-FECA injuries.

(3) The contractor has waived his right to sue on non-FECA claims falling within the supplementary coverage.

Applying the scheme to this case, the paragraph 6 waiver has no application to this claim for damages which is for injuries that fall within the coverage of FECA.

AFFIRMED and REMANDED.