236

Jerry W. LUNSFORD, Patricia Duncan, as Surviving Spouse and Administratrix of Ricky Duncan, Deceased; Betty Jean Kirk, as Surviving Spouse and Administratrix of Phillip Kirk, Deceased, et al., Plaintiffs–Appellants,

v.

Milton PRICE, William Roper, Carl Hale, David Graves, Donald Freezell, Jimmy D. Conrad, Stennis Young and Charles Morgan, Tennessee Valley Authority, Defendants–Appellees.

No. 88–4601.

United States Court of Appeals, Fifth Circuit.

Sept. 22, 1989.

Timothy P. Donahue, Birmingham, Emond & Vines, Birmingham, Alabama, for plaintiffs-appellants.

James E. Fox, Deputy General Counsel, Edwin W. Small, Asst. Gen. Counsel, Clay S. Davis, Jr., Tennessee Valley Authority, Knoxville, Tenn., for defendants-appellees.

Before RUBIN, KING and GARWOOD, Circuit Judges.

KING, Circuit Judge:

Plaintiffs-appellants appeal from the district court's grant of summary judgment to defendants on plaintiffs' claims of negligence in relation to an on-the-job blasting accident. We grant defendants' motion to substitute the Tennessee Valley Authority as the defendant pursuant to the Federal Employees Liability Reform and Tort Compensation Act and hold that the Tennessee Valley Authority is immune from suit because of the exclusive remedy provision of the Federal Employees Compensation Act.

I.

Plaintiffs-appellants, Jerry Lunsford, Ricky Duncan, deceased, and Phillip Kirk, deceased, ("plaintiffs") were employees injured or killed in an on-the-job blasting accident at the Tennessee Valley Authority ("TVA") Yellow Creek Nuclear Plant on December 4, 1978. Plaintiffs sought and received benefits from TVA under the Federal Employees Compensation Act ("FECA"). 5 U.S.C. §§ 8101–8193. Plaintiffs also filed this negligence action against various coemployees and supervisory personnel.

In 1974, TVA began blasting operations to excavate land for various buildings to be constructed at the Yellow Creek Nuclear Plant. The explosive selected was a water gel.[1] During the course of blasting operations, a number of explosive devices failed to fire. These undetonated explosives were removed from bore holes where they had been placed and returned to storage along with new explosives. They were then fired with the new explosives—a practice that continued until 1978.

In 1978, TVA decided that the undetonated explosives should be destroyed by burning. A written procedure was established for the burning of the explosives: a bed of combustible material was to be laid in a pit, the explosives spread in a thin layer over the bed, and the combustible materials ignited from a remote position. Plaintiffs' foreman, Frank Weatherspoon, was informed of this procedure.

On December 4, 1978, plaintiffs' crew were directed to dispose of certain undetonated explosives according to the above procedure. However, upon arrival at the pit, it was discovered that the pit was filled with water. Instead of draining the pit or waiting until a later time, plaintiffs were instructed to start an open wood fire and place the explosives in the fire. An explosion occurred while the crew was within a few feet of the fire. Lunsford was injured, and Duncan and Kirk were killed.

Each of the plaintiffs received FECA benefits. Plaintiffs then filed the present action in state court against 14 defendant TVA employees, 2 TVA blasting consultants and a fuse manufacturer. The action was removed to the district court pursuant to 28 U.S.C. §§ 1441(a), 1442(a)(1). The blasting consultants and fuse manufacturer were granted summary judgment. Three individual defendants were dismissed

for failure to serve. Of the 11 remaining defendants, 6 were granted summary judgment on the ground of official immunity, and 4 were granted summary judgment on the ground that plaintiffs' entitlement to FECA benefits bars an action against them under Mississippi law.[2] The case against defendant Weatherspoon is pending in the district court.[3]

The parties filed briefs regarding various aspects of the court's decisions below. After the Federal Employees Liability Reform and Tort Compensation Act of 1988 ("FELRTCA") was signed into law on November 18, 1988, the parties addressed that issue in supplementary briefs. Pursuant to FELRTCA, defendants filed a motion to substitute TVA[4] and, as a precursor to FELRTCA's applicability, TVA filed a certification that the individual defendants were acting within the scope of their employment. We address FELRTCA—finding it unnecessary to address the other issues on appeal.

## II.

The Federal Employees Liability Reform and Tort Compensation Act, Pub.L. No. 100–694, 102 Stat. 4563 (1988) [hereinafter cited by section number] became law on November 18, 1988. FELRTCA is a response to the decision of *Westfall v. Erwin*, 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988), which Congress saw as an erosion of the common law tort immunity formerly available to federal employees.[5] Section 2(a)(4). The purpose of the Act is to:

protect federal employees from personal liability for common law torts committed within the scope of their employment, while providing persons injured by the common law torts of federal employees

---

1. Plaintiffs received a settlement against Gulf Oil Chemicals Company—the manufacturer of the explosive used.

2. A motion was filed to make the summary judgments final for purposes of appeal. This motion was granted on August 15, 1988.

3. We express no opinion about that action.

4. Circuit Judge Rubin entered an order dated January 25, 1989 to add TVA as a defendant and carried the motion to substitute with the case.

5. The law, in essence, overrules the distinction *Westfall* drew between "operational" and "discretionary" capacities, and creates absolute tort immunity for acts of Federal employees within the course and scope of their employment.

with an appropriate remedy against the United States.

Section 2(b).

Because the Act was originally drafted as an amendment to the Federal Tort Claims Act ("FTCA"), which does not include TVA, the Senate Committee added a TVA section (Section 9) to the bill in order to "include the Tennessee Valley Authority workers within the scope of the protections provided by [the] bill." 134 Cong. Rec. S15599 (daily ed. Oct. 12, 1988).

Section 9(b)(1) provides that upon certification by the TVA that a defendant employee was acting within the scope of his employment, the action shall be deemed an action against the TVA and it will be substituted as the defendant.[6] The TVA has provided the proper certification in this case[7] and the parties do not dispute that by the terms of the Act, the TVA should be substituted as the party defendant if FELRTCA applies to pending cases. Under FELRTCA, plaintiffs' remedy against TVA is exclusive of any other civil action against a TVA employee regarding the same subject matter. Section 9(a)(1).[8] Plaintiffs contend, however, that (1) Section 9(c) eliminates defenses the TVA would otherwise enjoy under FECA and the TVA Act, and (2) application of the FELRTCA to pending cases is "manifestly unjust."

---

**6.** The text of Section 9(b)(1) in full provides:

(b) REPRESENTATION AND REMOVAL.—(1) Upon certification by the Tennessee Valley Authority that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding heretofore or hereafter commenced upon such claim in a United States district court shall be deemed an action against the Tennessee Valley Authority pursuant to 16 U.S.C. 831C(b) and the Tennessee Valley Authority shall be substituted as the party defendant.

**7.** Appellants do not contest TVA's certification that the defendant employees acts were within the scope of their employment.

**8.** Section 9(a)(1) provides that an action against the TVA is exclusive of any other civil action against a TVA employee. The text of that subsection provides:

### A. *Defenses Available to TVA under Section 9*

Unlike the remainder of FELRTCA, Section 9 was not intended to be cast as an amendment to FTCA because TVA does not fall under FTCA. 134 Cong. Rec. S16375 (daily ed. Oct. 14, 1988). Thus, Sections 9(a) and 9(b) are to be codified with the TVA Act of 1933 at 16 U.S.C. § 831c–2. However, due to a "drafting error," Section 9(c) was to be an amendment to 28 U.S.C. § 2674 (a provision of FTCA). As Senator Heflin explained:

Although most of the bill was in the form of amendments to [FTCA], the TVA provision was intended to be in the form of free-standing legislation, since the TVA does not come under [FTCA]. This intent was carried out in subsections (a) and (b) of section 9. Unfortunately, due to a drafting error, the provisions of subsection (c) are cast in the form of an amendment to [FTCA].

134 Cong. Rec. S16375 (daily ed. Oct. 14, 1988). The Senate and the House acted to correct the error by passing a concurrent resolution. 134 Cong. Rec. S16375 (daily ed. Oct. 14, 1988); 134 Cong. Rec. H10678 (daily ed. Oct. 20, 1988). The resolution directed the Clerk of the House to delete the reference to FTCA in Section 9(c) before it was sent to the President.[9] The

---

`  `(a) EXLUSIVENESS [sic] OF REMEDY.—(1) An action against the Tennessee Valley Authority for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Tennessee Valley Authority while acting within the scope of this office or employment is exlusive [sic] of any other civil action or proceeding by reason of the same subject matter against the employee or his estate whose act or omission gave rise to the claim. Any other civil action or proceeding arising out of or relating to the same subject matter against the employee or his estate is precluded without regard to when the act or omission occurred.

**9.** The concurrent resolution reads as follows:

*Resolved by the Senate (the House of Representatives concurring ),* That in the enrollment of the bill (H.R. 4612), the Clerk of the House of Representatives shall make the following corrections:

concurrent resolution was seen as making "no substantive change in the law" and designed merely to correct "totally technical errors in previously passed legislation." 134 Cong. Rec. H10678 (daily ed. Oct. 20, 1988). However, the bill became law without the changes anticipated in the resolution being made. Thus, Section 9(c), as enacted, reads as follows:

(c) RETENTION OF DEFENSES.— Section 2674 of title 28, United States Code, is amended by adding at the end thereof the following new paragraph:

"With respect to any claim to which this section applies, the Tennessee Valley Authority shall be entitled to assert any defense which otherwise would have been available to the employee based upon judicial or legislative immunity, which otherwise would have been available to the employee of the Tennessee Valley Authority whose act or omission gave rise to the claim as well as any other defenses to which the Tennessee Valley Authority is entitled under this chapter."

Plaintiffs contend that Section 9(c) [10] limits the TVA, in actions triggered by Section 9, to the defenses of judicial/legislative immunity, defenses available to the de facto defendant TVA employee, and to defenses available to TVA "under this chapter," i.e., the FTCA. Since the TVA is not subject to FTCA, TVA has no defenses under that act.[11] Thus, plaintiffs contend that Section 9(c) serves to eliminate any defenses beyond those enunciated therein for actions having their genesis in Section 9.

■ Not only is plaintiffs' argument contrary to the legislative intent of Section 9, but it is contrary to the expressed wording of the statute. The legislative history of Section 9 establishes that it was to include, in its retention of defenses provision, all defenses otherwise available under the TVA Act. Further, there is no evidence that Section 9(c) was to provide a complete laundry list of defenses available to TVA for claims triggered by Section 9. In other words, there is no indication that Congress intended to repeal any defenses that would have been available to TVA prior to FELRTCA's enactment. Congress' intent was not merely relegated to the coffers of legislative history, but was engrafted in the letter of Section 9—stating that upon substitution of the TVA, an action "shall proceed in the *same manner as any action* against the Tennessee Valley Authority and shall be subject to the limitations and exceptions applicable to those actions." Section 9(b)(4) (emphasis added). Thus, it is clear that the TVA did not shed any defenses when Congress enacted Section 9.

■ We now turn to TVA's defense in this action [12]—the exclusive remedy provision of FECA which provides:

The liability of the United States or an instrumentality thereof under this sub-

---

(1) In section 9(c) of the bill, strike the words "Section 2674 of title 28, United States Code, is amended by adding at the end thereof the following new paragraph:"; and

(2) In section 9(c) of the bill, as corrected, strike the quotation marks and the words "under this chapter."

**10.** We accept, for the purposes of this appeal, plaintiffs' contention that the changes anticipated by the concurrent resolution have no force since they were not brought to bear on the enacted law. We recognize, however, the "longstanding line of precedent establish[ing] the principle that a statute may be interpreted and enforced in a manner contrary to its literal and unambiguous wording when the intent of the legislative scheme clearly indicates a result contrary to that dictated by the [words of the] statute." *Abdalla v. Commissioner of Internal Revenue,* 647 F.2d 487, 496 (5th Cir. Unit A 1981) (*citing Church of the Holy Trinity v. United States,* 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed.

226 (1892) (limited judicial revision of clear statute)).

**11.** Senator Heflin confessed that the erroneously drafted version of Section 9(c) was, in part, "meaningless, since: One, the FTCA does not apply to the TVA and two, the phrase 'with respect to any claim to which this section—that is, Section 2674 of the FTCA—applies' could not apply to any claim against TVA." 134 Cong. Rec. S16375 (daily ed. Oct. 14, 1988).

**12.** We find it unnecessary to remand this case for a determination of the applicability of the exclusivity provision of FECA. The law on this subject is clear and plaintiffs do not seriously contest its applicability to TVA. *See Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985) ("[T]he purely legal question on which Mitchell's claim of immunity turns is appropriate for our immediate resolution notwithstanding that it was not addressed by the Court of Appeals."); *Nixon v. Fitzgerald,*

chapter or any extension thereof with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States or the instrumentality to the employee, his legal representative, spouse, dependents....

5 U.S.C. § 8116(c). Under FECA, workers are "guaranteed the right to receive immediate, fixed benefits regardless of fault and without need for litigation, but in return, they lose the right to sue the government." *Lockheed Aircraft v. United States*, 460 U.S. 190, 194, 103 S.Ct. 1033, 1036, 74 L.Ed.2d 911 (1983); *see also Avashti v. United States*, 608 F.2d 1059, 1060 (5th Cir.1979) ("[R]emedy provided by FECA ... is exclusive of any other remedy...."). The exclusivity provision of FECA has been applied to preclude TVA employees from bringing actions against TVA after the employees received FECA benefits. *Flippo v. TVA*, 486 F.2d 612 (5th Cir.1973); *Posey v. TVA*, 93 F.2d 726 (5th Cir.1937). Appellants have already received FECA benefits. FECA is the exclusive remedy for TVA employees. Thus, appellants' action here is barred. *See Heathcoat v. Potts*, 880 F.2d 419 (11th Cir.1989) ("[T]here can be no doubt, in light of the underlying legislative history, that section 9 [of FELRTCA] permits the TVA, as party defendant, to assert the defense of absolute tort immunity.").

**B. Applicability of Section 9 to Pending Cases**

Plaintiffs maintain that the application of FELRTCA to pending cases would result in

a "manifest injustice." *Bradley v. School Bd. of Richmond*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1973). The *Bradley* test for whether application of a law to pending cases is manifestly unjust "centers upon" three factors:

(a) the nature and identity of the parties,

(b) the nature of their rights, and

(c) the nature and impact of the change in law upon those rights.

*Id.* at 717, 94 S.Ct. at 2019. However, where a law "by its terms, ... was to apply to pending cases," the manifest injustice test should not be reached. *Id.* at 712, 94 S.Ct. at 2016. *See also United States v. The Schooner Peggy*, 1 Cranch. 103, 2 L.Ed. 49 (1801) (applying terms of convention coming into force while case pending before Supreme Court because convention explicitly applied to pending cases) (cited with approval in *Bradley*, 416 U.S. at 711–13, 94 S.Ct. at 2016–17).

■ FELRTCA, by its terms, applies to pending cases.[13] The act is simply replete with references to its applicability to cases not yet final and unreviewable. Section 8 establishes that FELRTCA "shall apply to all claims, civil actions, and proceedings pending on, or filed on or after, the date of the enactment of this Act." Section 8(b); *Accord Yalkut v. Gemignani*, 873 F.2d 31, 34 (2d Cir.1989) ("Congress specifically provided that the Reform Act was to apply to suits pending at the time of its enact-

457 U.S. 731, 743 n. 23, 102 S.Ct. 2690, 2698 n. 23, 73 L.Ed.2d 349 (1982) ("Nor ... need we remand to the Court of Appeals for a decision on the merits. The immunity question is a pure question of law, appropriate for our immediate resolution."); *In re Hronek*, 563 F.2d 296, 298 (6th Cir.1977) ("Although we recognize that the normal procedure is to remand a case where the lower court has not considered a pertinent issue, considerations such as judicial economy dictate otherwise when the resolution of the issue is clear.").

The same conclusion was reached by the Fourth Circuit in *Jordan v. Hudson*, 879 F.2d 98 (4th Cir.1989). In *Jordan*, the defendants were granted summary judgment on the basis of *Westfall* and plaintiff appealed. While the case was pending on appeal, FELRTCA was enacted. Defendants moved to substitute the United

States as defendant and remand. The Court substituted the United States as defendant but affirmed because it found that "remand to the district court ... [would] serve no useful purpose...."

**13.** It is clear that this case is "pending" for purposes of *Bradley* type analysis. *See Memorial Hosp. v. Heckler*, 706 F.2d 1130, 1137 (11th Cir.1983), *cert. denied*, 465 U.S. 1023 (1984) ("Until appellate rights are exhausted, even an otherwise valid judgment may be negated by supervening legislation."); *Hammond v. United States*, 786 F.2d 8, 12 (1st Cir.1986) (" 'No person has a vested interest in any rule of law entitling him to insist that it shall remain unchanged for his benefit.' This is true ... until a final, unreviewable judgment is obtained....").

ment.").[14]   Section 9 reaffirms the applicability of FELRTCA to pending cases against TVA employees.  First, Section 9(a) states that common law tort actions against TVA employees are "precluded without regard to when the act or omission occurred."   Second, Section 9(b) provides for substitution of the TVA as defendant in "any civil action heretofore or hereafter commenced...."   *See Heathcoat v. Potts,* 880 F.2d 419 (11th Cir.1989) (holding that TVA provisions of FELRTCA, "by its terms, applies to actions 'pending on' the date of its enactment").   Clearly Congress intended that FELRTCA apply to pending cases such as this.   Therefore, we cannot address plaintiffs' claim of manifest injustice.[15]   *See Midland Nat'l Bank v. Conlogue,* No. 83–1707–K, 1989 WL 31439 (D. Kan.1989) (Court rejected *Bradley* challenge to FELRTCA because "express terms and legislative history" of the act leave "no doubt" as to its applicability to pending cases.).

### III.

Thus, we conclude that the TVA should be substituted as the defendant and that TVA is immune from suit because of the exclusivity provision of FECA.[16]

AFFIRMED.

---

**14.**  Plaintiffs maintain that Section 8 is not applicable to this case because Section 8 is codified under FTCA—which does not apply to TVA. However, we need not address appellants' contention because Section 9 itself indicates that it applies to pending cases.

**15.**  Plaintiffs have not contested the constitutionality of FELRTCA and we express no opinion on that matter here.  *But see Dagnan v. Gouger,* No. CIV–1–88–452, 1989 WL 81655 (S.D. Tenn. 1989) ("Concern is had as to whether the certification procedure [of FELRTCA] violates the

doctrine of separation of powers ... [by] conclusively establish[ing the] scope of office or employment...."); *Martin v. Merriday,* 706 F.Supp. 42 (N.D. Ga.1989) ("Defendant's interpretation of [FELRTCA] raises serious constitutional questions because the act's lack of standards by which the [government conclusively] determine[s] 'scope of employment' threatens to run afoul of the nondelegation doctrine.").

**16.**  Having affirmed on the basis of FELRTCA, plaintiffs' other enumerations of error are moot.