**Maggie Bell HEATHCOAT, as Administratrix for the Estate of Leonard James Heathcoat, Deceased, Plaintiff–Appellant,**

v.

**Karl POTTS, Kenneth Rhoden, Clyde Snoddy, et al., Defendants–Appellees.**

No. 89–7751.

United States Court of Appeals,
Eleventh Circuit.

July 9, 1990.

Kathryn H. Sumrall, Emond & Vines, Birmingham, Ala., for plaintiff-appellant.

Lewis E. Wallace, James E. Fox, Robert C. Glinski, Ralph E. Rodgers, Thomas A. Robins, Edwin W. Small, Tennessee Valley Authority, Knoxville, Tenn., for defendants-appellees.

Before HATCHETT and CLARK, Circuit Judges, and MORGAN, Senior Circuit Judge.

PER CURIAM:

For the third time, this court is called upon to review the legal proceedings arising out of a tragic accident in which an individual under a personal services contract with the Tennessee Valley Authority ("TVA") was killed while performing his duties at a TVA facility. After the accident, Maggie Bell Heathcoat, the widow and administratrix of the decedent's estate, brought a wrongful death action in state court against seven supervisors and staff specialists of the TVA. On June 27, 1984, this state court action was removed by the defendants to the federal court in the Northern District of Alabama.

The first time this court had occasion to review the proceedings in this case was in 1986. In this first appeal, *Heathcoat v. Potts*, 790 F.2d 1540 (11th Cir.1986), *cert. denied*, 484 U.S. 1025, 108 S.Ct. 747, 98 L.Ed.2d 761 (1988) (*"Heathcoat I"*), the defendants argued (1) that, as federal government employees exercising discretionary functions and acting within the outer perimeters of their lines of duty, they were entitled to absolute immunity from state law tort actions; (2) that a release in the decedent's personal services contract barred the plaintiff's claims; and (3) that, because the defendants were acting as alter egos or instrumentalities of the TVA in fulfilling the duties that the TVA owed the decedent, the exclusive remedy provisions of the Federal Employees Compensation Act ("FECA"), 5 U.S.C. § 8116(c) (1982), barred the plaintiff's action. We held that the factual record was inadequate to determine whether the defendants' first claim had merit, *id.*, at 1542–43, and we rejected the defendants' latter two arguments. *Id.*, at 1543–45.

After this ruling, the district court stayed the proceedings in the litigation until after the Supreme Court denied the defendants' petition for certiorari. Upon denial of the defendants' petition, the district court scheduled the case for trial, which commenced on February 29, 1988. This trial resulted in the plaintiff receiving a two million dollar damage award against the individual defendants.

The defendants filed various motions for post-trial relief, charging, *inter alia*, that they were entitled to absolute immunity. The district court, relying upon the standard adopted by this court in *Heathcoat I* and subsequently endorsed by the Supreme Court in *Westfall v. Ervin*, 484 U.S. 292,

108 S.Ct. 580, 98 L.Ed.2d 619 (1988), denied these motions.

The denial of these post-trial motions gave rise to our second review of this case in *Heathcoat v. Potts*, 880 F.2d 419 (11th Cir.1989) (table) (*"Heathcoat II"*). In their initial brief before this court, the defendants argued that the district court erred in (1) holding that the individual defendants were not cloaked with federal official immunity; (2) finding that the acts and omissions of the decedent did not constitute proximate contributory negligence; (3) holding that the plaintiff had established that each of the defendants owed the decedent a specific legal duty that was the proximate cause of his accident; and (4) holding that the defendants could be held liable for punitive damages.

The defendants also brought to this court's attention that enactment of the Federal Employees Liability Reform and Tort Compensation Act of 1988 ("FELRTCA"), H.R. 4612, 100th Cong., 2d Sess. (1988) was imminent, and that they would be seeking appropriate relief under the statute once former President Reagan signed the bill into law. Brief of Defendants–Appellants in *Heathcoat v. Potts*, 790 F.2d 1540 (11 Cir.1986). Once former President Reagan signed the bill into law, *see* Pub.L. No. 100–694, 102 Stat. 4563 (1988), the defendants filed an additional brief arguing that enactment of this bill required a holding that, because the individual defendants were acting within the scope of their employment, they were absolutely immune from suit and that the TVA was the only proper party defendant. Reply Brief of Defendants–Appellants in *Heathcoat v. Potts*, 790 F.2d 1540 (11 Cir. 1986). Finally, they contended that because the TVA is not subject to punitive damages and because under Alabama law a wrongful death action is treated as being solely punitive in nature, the action was due to be dismissed in its entirety. *Id.*, at 4.

The plaintiff opposed this proposed application of the FELRTCA on two grounds. First, relying upon a drafting error in the statute, she contended that the TVA was not entitled to raise its own defense of sovereign immunity.[1] Second, she argued that retroactive application of the FELRTCA in this case would result in manifest injustice.

In an unpublished opinion, a panel of this court rejected these two arguments, reasoning as follows:

The new law contemplates the following scheme. Upon certification by the Attorney General that the named individual defendant was "acting within the scope of his office or employment at the time of the incident out of which the claim arose," the case at issue will be removed to federal court and the United States will be substituted as the party defendant. *See* § 6(d)(1), (2). In that capacity, the United States will, of course, be entitled to assert its defense of absolute tort immunity. *See* § 4. New section 9 sets forth an identical scheme for the TVA, and there can be no doubt, in light of the underlying legislative history, that section 9(4) permits the TVA, as party defendant, to assert the defense of absolute tort immunity.

Because the new law, by its terms, applies to actions "pending on" the date of its enactment, the judgment in the present case must be vacated. The case must be remanded to permit the TVA to assert its immunity defense in accordance with the new law.

*Heathcoat II, supra,* at 3–4. Mrs. Heathcoat did not challenge this determination either by requesting a rehearing or by seeking Supreme Court review.

On remand, the district court, believing it was constrained by the language used in this opinion, concluded that the TVA was entitled to be substituted as party defen-

---

1. This argument concerning the drafting error in the FELRTCA and the resulting purported limitation on the TVA's ability to raise its own immunity defenses is the subject of a recent published opinion by another panel in this circuit. *See Springer v. Bryant*, 897 F.2d 1085 (11th Cir.1990) (rejecting the argument that the TVA could not assert its own immunities under the FELRTCA). *Accord Lunsford v. Price*, 885 F.2d 236 (5th Cir.1989).

dant for the individual defendants and that the action was due to be dismissed.

In her appeal of this action, the plaintiff takes a different tack from her last appeal in which she implicitly conceded that the TVA was entitled to be substituted for the individual defendants. Now she argues that the FELRTCA, by its very terms, does not provide for the TVA to be substituted as a party defendant in this action.[2]

For the reasons that follow, we affirm the conclusion of the district court.

## DISCUSSION

■ As discussed above, Mrs. Heathcoat's arguments in *Heathcoat II* addressed only the impact that substitution of the TVA as party defendant for the individual defendants would have on the proceedings. This argument, of necessity, implicitly conceded that the TVA could properly be substituted as the sole party defendant: as a precondition to determining the effect that substitution of the TVA would have on the proceedings, a decision would necessarily need to be made as to whether substitution under the Act was permissible. *Cf. Florida Dep't of Labor and Employment Security v. United States Dep't of Labor*, 893 F.2d 1319, 1322 (11th Cir.1990) (prior to considering whether Debt Collection Act abrogates the federal government's common law right to collect interest, reviewing court must determine whether the Act applies to the case at hand); *United States v. Weaver*, 884 F.2d 549, 551 (11th Cir.1989) (per curiam) (criminal defendant sentenced before the effective date of the Crime Control Act cannot challenge the Act's constitutionality). Accordingly, we conclude that the argument now presented on appeal has been waived by appellant's failure to raise this argument during the pendency of *Heathcoat II* and that the merits of her present argument need not be reached on this appeal.

■ The decision in *Heathcoat II* is the law of this case. Under the "law of the case" doctrine, the "findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal." *Westbrook v. Zant*, 743 F.2d 764, 768 (11th Cir.1984) (quoting *Dorsey v. Continental Casualty Co.*, 730 F.2d 675, 678 (11th Cir.1984)). This judicially created doctrine, *see generally Litman v. Massachusetts Mutual Life Insurance Co.*, 825 F.2d 1506, 1509–12 (11th Cir.1987), serves several important purposes, including (1) insuring that litigation on an issue will come to an end, (2) discouraging "panel shopping" at the circuit court level, and (3) assuring the obedience of lower courts to the decisions of appellate courts. *Westbrook*, 743 F.2d at 768 n. 6; *see Piambino v. Bailey*, 757 F.2d 1112, 1120 (11th Cir.1985). The doctrine does not extend to every issue that could be ever raised in a given litigation but rather is limited to those issues previously decided; the law is clear, however, that the law of the case doctrine "comprehends things *decided by necessary implication* as well as those decided explicitly." *Wheeler v. City of Pleasant Grove*, 746 F.2d 1437, 1440 (11th Cir.1984) (per curiam) (emphasis in

---

**2.** Summarized briefly, her argument proceeds as follows:

The statute allows for three different means by which the TVA may be substituted in for a TVA employee defendant. First, in cases commenced in federal court, the TVA can initiate the substitution process by filing a certification that the defendant employee was acting within the scope of his or her employment at the time of the alleged incident. Section 9(b)(1). Second, in cases commenced in state courts, the TVA can initiate the process by (1) filing the proper certification before trial begins and (2) removing the case to federal district court. Section 9(b)(2). And finally, in the event that the TVA has refused to initiate the substitution pro-

cess, the defendant employee may do so "at any time before trial." Section 9(b)(3).

Because this case was originally filed in State court and was then subsequently removed to federal court (albeit long before the FELRTCA was enacted), she contends that the first alternative, which requires that the case be commenced in federal court, is inapplicable. Turning to the second and third alternatives, she argues that both of these provisions require that the substitution process commence prior to trial. Since that did not occur in this case (and, indeed, could not have occurred in this case), she concludes that the Act does not allow for substitution in this case.

original; quotation omitted); *Piambino*, 757 F.2d at 1120.

■ The language of the opinion and the mandate issued in *Heathcoat II* clearly indicate that the previous panel determined that substitution was appropriate. The opinion in *Heathcoat II* concluded with this final sentence: "The case must be remanded to permit the TVA to assert its immunity defense in accordance with the new law." *Id.*, at 4. Prior to deciding that the TVA was entitled to assert its own immunity defenses, the panel necessarily had to conclude that the TVA could properly be substituted for one of its employees. Consequently, unless one of the exceptions to the "law of the case" doctrine is applicable here, this conclusion is binding.

This court has identified three circumstances in which the law of the case doctrine will not preclude a later panel from addressing an issue decided on a prior appeal. "[T]he law of the case doctrine does not apply to bar reconsideration of an issue when (1) a subsequent trial produces substantially different evidence; (2) controlling authority has since made a contrary decision of law applicable to that issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." *Wheeler*, 746 F.2d at 1440 (quoting *United States v. Robinson*, 690 F.2d 869, 872 (11th Cir.1982) (citations omitted)); *Westbrook*, 743 F.2d at 768. In this case no new evidence has been taken nor has there been any contrary, intervening changes in the law; thus, only the third exception is potentially applicable.

Having examined the statute, we conclude that application of the FELRTCA in this case would not work a manifest injustice. Relying upon the statute, the prior panel determined that "the new law, by its terms, applies to actions 'pending on' the date of its enactment," *Heathcoat II, supra*, at 4; this fact was sufficient for the panel to reject the "manifest injustice" argument being proffered during that appeal. We do not find this conclusion to be clearly erroneous. We note that another panel in this circuit has recently ruled in *Sowell v. American Cyanamid Co.*, 888 F.2d 802, 805 (11th Cir.1989), that the FELRTCA applies in a case procedurally identical to this case. In *Sowell*, as in this case, the litigation commenced in state court, was removed to federal court, and proceeded to trial where the plaintiff received a large jury verdict in its favor.[3] Notwithstanding the fact that the FELRTCA was not signed into law until after the plaintiff had received his jury verdict, the panel ruled that application of the Act and substitution of the United States for the individual federal government employee defendant was proper. *Id.* Insomuch as Section 9 of the FELRTCA, which extends the Act's coverage to the TVA, was designed to mirror the FELRTCA's protections for federal employees, *see Springer v. Bryant*, 897 F.2d 1085 (11th Cir.1990), we cannot conclude that application of the FELRTCA in this case was clearly erroneous.[4]

---

**3.** This procedural history, while not immediately apparent from reading the published opinion, has been confirmed by a review of the record by this court.

**4.** Our review of the legislative history of the FELRTCA adds further support to our conclusion that the prior panel's determination was not clearly erroneous. Reviewing the Congressional floor statements concerning enactment of Section 9 (covering the TVA), it is obvious that Congress was aware of and quite concerned about this case. *See* 134 Cong.Rec. S15599 (daily ed. October 12, 1988) (remarks by Senator Grassley: "Mr. President, I am *not just* "crying wolf." The dangerous effects of Westfall are already very tangible. For example, ... on March 5, 1988, a $2 million judgment was entered against six employees of the Tennessee Valley Authority in a wrongful death case").

Although the legislative history is silent as to whether Congress sought to protect the instant individual defendants with the passage of the Act, this inference is supported by both the facts that Congress took immediate action to rectify the situation and that Congress provided that the law was to apply to all pending cases.

Additionally, as strictly a matter of statutory construction, it is not clear that the interpretation of Section 9(b)(2) that Mrs. Heathcoat offers is the only permissible interpretation. According to her interpretation, Section 9(b)(2) provides that substitution of the TVA for an individual TVA employee defendant is permissible only if the certification is submitted by the TVA before trial. A second interpretation of the statute is that the time constraint only limits when *removal* of the action may take place and does not dictate when *substitution* of parties is

Once the TVA was substituted for the individual defendants, there is no question that dismissal of this action was appropriate, both because Heathcoat received benefits under the FECA, 5 U.S.C. § 8101 *et seq.; see Sowell*, 888 F.2d at 805; *Lunsford v. Price*, 885 F.2d 236, 239–41 (5th Cir.1989), and because the TVA is absolutely immune from being sued in an Alabama wrongful death action. *Springer, supra*, at 1089; *Painter v. Tennessee Valley Authority*, 476 F.2d 943, 944–45 (5th Cir.1973) (per curiam).[5] Consequently, we conclude that the judgment of the district court dismissing this action is due to be

AFFIRMED.

permitted. *Cf. Nadler v. Mann*, 731 F.Supp. 493 (S.D.Fla.1990) (available on Westlaw, 1990 WL 21033) (holding that the statute allows for different treatment by a district court judge in construing a certification submitted by the governmental agency depending upon whether the issue is removal of the action from state court or substitution of the federal government for the individual defendant); *Gogek v. Brown University*, 729 F.Supp. 926 (D.R.I.1990) (available on Westlaw, 1990 WL 9497) (same); *Petousky v. United States*, 728 F.Supp. 890 (N.D.N.Y.1990) (available on Westlaw, 1990 WL 3009)

(same); *Baggio v. Lombardi*, 726 F.Supp. 922, 925 (E.D.N.Y.1989) (same); *Martin v. Merriday*, 706 F.Supp. 42, 44–45 (N.D.Ga.1989) (same).

While this interpretation may or may not be the correct interpretation of the statute, it presents a close enough question that we cannot conclude that the panel that resolved *Heathcoat II* was clearly erroneous.

**5.** This case was decided prior to the close of business on September 30, 1981, and is binding precedent under *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981).